UNITED STATES of America, Plaintiff–Appellee,

v.

Robert MONTGOMERY, Defendant–Appellant.

No. 93–1279.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 17, 1994.

Decided May 2, 1994.

---

Charles Goodloe, Jr., Asst. U.S. Atty., Indianapolis, IN, Dennis J. Dimsey, Lisa J. Stark (argued), Dept. of Justice, Civil Rights Div., Appellate Section, Washington, DC, for plaintiff-appellee.

Alan M. Freedman, Freedman & Bornstein (argued), Chicago, IL, for defendant-appellant.

Before BAUER and CUDAHY, Circuit Judges, and MORAN, District Judge.*

BAUER, Circuit Judge.

This case involves the unfortunate combination of a home for convicted child molesters and homeless veterans, a night out with the boys at a local tavern, a feeble attempt at a cross-burning, and the vandalization of a car. Among other things, this mix resulted in the conviction of Robert Montgomery for conspiring to interfere with civil rights and interfering with civil rights in violation of 18 U.S.C. § 241, 42 U.S.C. § 3631(b)(1), and 18 U.S.C. § 2. The district court sentenced Montgomery to a prison term of thirty months. Montgomery appeals.

I.

In 1988, Patsy McCormick opened McCormick Place in Indianapolis, Indiana as a residential treatment center for convicted child molesters. McCormick Place was located in the heart of an all-white neighborhood known as the "Valley." From its opening until mid–1991, all the residents of McCormick Place were white, and the neighbors apparently had no objection to their presence. In June 1991, however, the center was converted to a shelter for approximately 40 homeless veterans, about sixty percent of whom were black. Problems began shortly after the black veterans arrived at McCormick Place. The residents of the shelter were not popular with some of the Valley's residents.

At about 4:00 p.m. on July 28, 1991, a group of men went to a neighborhood tavern, Hoffa's, and began drinking. The bar teemed with discussion of McCormick Place

* The Honorable James B. Moran, Chief Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

and its child molesters and blacks, who they repeatedly described as "niggers." Among those at Hoffa's were Torrence Ingram, Donald (Pete) Viles, Don Wolf, Gary Trent, Kenneth Fallen, Shawn Branham, and Montgomery. Viles suggested that they build and burn a cross in order to scare the blacks who lived at the shelter. That way, he hoped, they would be scared into leaving the neighborhood. Montgomery played pool while Ingram, Viles, and Fallen plotted the details.

Hoffa's closed at midnight and the group went to a party at the nearby home of Fallen and Trent. At the party, several individuals, including Montgomery, sat around the kitchen table and spoke about the shelter for about twenty minutes. Viles said that he was "ready to go do something about the shelter" and that he wanted to burn a cross to scare the blacks and child molesters away. Ingram agreed and he and Viles went outside and began to build a large cross out of a pair of two-by-fours. Ingram and Viles put the two boards together to make a cross. Ingram held the two-by-fours together while Viles hammered nails in them. Once they finished building the cross, Viles asked Fallen and Trent if they had anything that they could wrap around the cross to ensure that it would ignite and burn. Trent wanted no part of the cross-burning, and he left the party with Chantal Warren. Fallen, however, brought some curtain material and gave it to Viles. In the presence of Montgomery and others, Viles wrapped the cross with curtain material.

Montgomery, Viles, Fallen, Ingram, and a few others marched the four blocks to McCormick center with the cross, which was between six and seven feet tall. Once they arrived at the shelter, Ingram picked up a brick and used it to pound the cross into the ground while Viles tried to ignite the cross. Montgomery and Fallen scurried around to the front of the shelter and attacked Patsy McCormick's parked car. They hit it, kicked it, broke the car's windows, and scraped the car's paint. Ingram yelled at Montgomery and Fallen to stop because, as he put the matter, "we weren't there to tear up nobody's car, the car had no part in it, and I heard glass breaking." The cross never burned brightly as hoped, but only smoked and smoldered.

David Klemenz, the shelter's security guard, was awakened by all the ruckus. Klemenz woke McCormick, explained the situation to her, and warned that they were in a lot of trouble. McCormick looked outside and saw the cross. "It was terror," she told the jury. Klemenz opened a door and yelled, "Hey, what are you doing?" Some of the members of the mob had left, but those that remained panicked and ran back to Fallen's apartment.

Later that morning, Montgomery and Fallen went to Warren's home looking for Trent. When they arrived, they knocked on a window. When Trent came to the window, Fallen told him that they "went down there and burnt the cross." Montgomery laughed at this. The jury did not. It convicted Montgomery.

## II.

Montgomery raises two issues on appeal. First, he contends that there was insufficient evidence to convict him for the burning of the cross and the vandalization of McCormick's car. Second, Montgomery complains that his trial counsel was ineffective.

We begin with the insufficient evidence claim. We will uphold the conviction if after we review all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Chandler,* 12 F.3d 1427, 1432 (7th Cir.1994). Unless there is no evidence from which the jury could have returned a guilty verdict, the conviction will stand. *United States v. Hernandez,* 13 F.3d 248, 251 (7th Cir.1994).

Montgomery argues that the evidence in this case shows that he merely knew about but did not participate in the planning and execution of the cross-burning and vandalization. Our review of the record, however, indicates that Montgomery played an active role in the conspiracy. While perhaps not the ringleader, Montgomery went along with and participated in the cross-burning. Testimony in the case reveals that Montgomery

sat at Fallen's kitchen table and discussed doing "something about the shelter," including building a cross to scare its residents out of the neighborhood. Ingram and Viles built the cross; Montgomery joined them (and others) in the trek to the shelter. He did more than just passively go along with the cross-burning. Moreover, he was not content to just stand there while Ingram and Viles readied the cross for burning. Montgomery, joined by Fallen, walked to Patsy McCormick's car and started beating it. According to Ingram, "Robert Montgomery was on the passenger side and on the right front side hitting it with something and kicking the car." The jury by its verdict believed Ingram and the testimony of other witnesses, including many of Montgomery's co-conspirators, and returned a guilty verdict. The overwhelming evidence of Montgomery's role in the planning and participation of this crime is easily sufficient to support Montgomery's conviction.

■ Montgomery's other claim, which he raises for the first time on appeal, is that his lawyer's performance was so ineffective that he was denied his constitutional right "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Ordinarily, such claims are better addressed to the district court, either by a motion for a new trial or in collateral proceedings. *United States v. Levine,* 5 F.3d 1100, 1108 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1224, 127 L.Ed.2d 569 (1994). We will, however, resolve an ineffective assistance of counsel claim if the issue is sufficiently clear cut. We have reviewed the record and Montgomery's allegations and conclude that the record is sufficiently developed for us to decide the issue here.

■ Montgomery's trial counsel is strongly presumed to have performed effectively. *Levine,* 5 F.3d at 1109. To succeed on his ineffective assistance of counsel claim, Montgomery must show both (1) that his trial counsel's performance was deficient and (2) that his counsel's deficient performance prejudiced his defense and deprived him of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Levine,* 5 F.3d at 1108.

A fair trial for these purposes is a trial whose result is reliable. *Id.*

Montgomery contends that his trial counsel performed ineffectively when counsel opened the door to evidence of Montgomery's character. Specifically, trial counsel asked Montgomery during direct examination about his arrest record. Montgomery responded by rolling his eyes and telling the court and the jury that "when I was 15 I got my first car and it was kind of fast, and I did get a couple of tickets. But other than that, I have never did anything."

When pressed on cross-examination, Montgomery initially defended his answer. The prosecutor then asked Montgomery if he had also been arrested for battery. Montgomery admitted that in fact he was arrested for battery, but explained, "that was not true and I was not—whatever the guy knew, it wasn't true and he did not come to court."

■ According to Montgomery, his trial counsel should have avoided the question of his arrest record or have asked whether Montgomery had been *convicted* of any crime. Perhaps as a trial technique, the latter would have been better. Ultimately, however, the testimony was damaging because Montgomery did not answer truthfully when asked about his arrest record. The jury heard the evidence, offered to show Montgomery's good character, that he was a good citizen with only "a couple of tickets." The prosecution then pressed Montgomery on cross-examination until Montgomery admitted his battery arrest. Montgomery has no one to blame but himself for this. He was not deprived of a fair trial when his lawyer asked about his arrest record.

■ Finally, Montgomery claims that his lawyer should have objected when the prosecutor asked him about the circumstances of his arrest. Again, though, there was no prejudice as such evidence was admissible. *See, e.g., United States v. Hargrove,* 929 F.2d 316, 320 (7th Cir.1991) (pursuant to Fed.R.Evid. 403, district court did not abuse its discretion in allowing testimony about the circumstances of defendant's arrest).

Montgomery's lawyer did not perform ineffectively and the evidence of Montgomery's guilt is sufficient. Vandalizing cars and burning crosses to frighten people is against the law. Robert Montgomery's conviction is

AFFIRMED.