UNITED STATES of America,
Plaintiff–Appellee,

v.

Bernardo PEREZ, also known as Junior, also known as Marcelino Garcia, Defendant–Appellant.

No. 92–2837.

United States Court of Appeals,
Seventh Circuit.

Argued April 5, 1994.

Decided July 1, 1994.

R. Jeffrey Wagner, Asst. U.S. Atty., William J. Lipscomb (argued), Office of U.S. Atty., Milwaukee, WI, for plaintiff-appellee.

Michael J. Gonring (argued), Nora M. Platt, Kevin P. Crooks, Quarles & Brady, Milwaukee, WI, for defendant-appellant.

Before POSNER, Chief Judge, BAUER, Circuit Judge, and ASPEN, District Judge.*

BAUER, Circuit Judge.

Bernardo Perez was convicted of conspiring to possess with the intent to distribute cocaine, possession with the intent to distribute cocaine, and possession of a firearm during and in relation to a drug trafficking crime in violation of 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. §§ 2 and 924(c). The district court sentenced Perez to a prison term of 181 months. Perez appeals both his conviction and his sentence.

## I.

This drug-dealing case began in April of 1990 when Ruben Viart began transporting large quantities of cocaine from a supplier, Luis Gato, in Miami, Florida to distributors in Milwaukee, Wisconsin. The Milwaukee distributors included Perez, William Small,

* The Honorable Marvin E. Aspen, United States District Judge for the Northern District of Illinois, is sitting by designation.

and Carlos Concepcion. Viart worked for Gato and followed Gato's directions.

Typically, Gato would mail cocaine to Viart. Viart would deliver the cocaine to Perez, Small, or Concepcion in Milwaukee, then return to Miami. Alicia Small, William's wife, worked with William to distribute cocaine.

Perez obtained cocaine from Concepcion and Small, as well as Viart. Perez would pay for the cocaine, then resell it. He returned any unsold amounts to the person who originally sold him the cocaine. In 1990, for example, Gloria Martin, who worked for Small, picked up half an ounce of cocaine from Perez that was left over from seven ounces of cocaine that another drug dealer had delivered to Perez.

In October of 1990, Viart drove from Miami to Milwaukee with a kilogram of cocaine from Gato. At Gato's direction, Viart gave half of the cocaine to Small and half to Concepcion. Viart was arrested in Milwaukee outside Concepcion's residence on November 2, 1990 with over $7,000 in cash, part of which he had received from Small for the delivery of cocaine. At the same time, agents searched Concepcion's residence and found cocaine in the refrigerator and an address book which contained telephone numbers for Viart and Small. Viart was later released. After his release, Viart quickly returned to his drug-dealing activities.

On November 14, 1990, Milwaukee police officers executed a search warrant at Perez's Milwaukee house. Perez was the target of the search. At Perez's home, the officers found identification for Perez, including a Wisconsin driver's license and a discount club card. These items were on a dresser in a bedroom, along with a receipt with the house's address and the name "Bernardo." The agents also found a substantial quantity of cocaine, two Western Union money transfers payable to Viart, two handguns, ammunition, cutting agent for the cocaine, an O'Haus Dial-a-Gram scale for weighing cocaine, an address book which contained Viart's Miami telephone number, and a beeper number that corresponded to a beeper found the same day at Small's Milwaukee residence. Phone records indicated that Viart called Perez's Milwaukee residence from Miami several times during the latter half of October of 1990.

In early 1991, Viart again made deliveries of cocaine to different cocaine dealers in Milwaukee, including Perez. Viart sent much of the cocaine through the mail. Perez paid Viart for the cocaine by wiring money to Viart through Western Union. On at least one occasion, Viart mailed five ounces of cocaine to Perez's home for Concepcion because Concepcion did not have an address. Concepcion paid Viart $1,000 per ounce for the cocaine.

On March 16, 1991, Milwaukee police officers used Concepcion in an undercover capacity to purchase five ounces of cocaine from Perez's Milwaukee home. On March 22, 1991, agents used Concepcion to wire cash through Western Union to Viart in Miami in exchange for cocaine.

Next, on April 5, 1991, agents accompanied Concepcion to Perez's house. Concepcion entered the residence and returned with another five ounces of cocaine.

In August of 1991, Viart travelled to Milwaukee with 750 grams of cocaine. Agents arrested him. On October 3, 1991, agents arrested Perez at his Milwaukee home. The agents searched Perez's home and recovered $5,580 in small bills in the basement, a bag that contained cocaine and a photo identification for Perez, an address book that contained Viart's telephone number in Miami, and several bullets.

Perez was indicted, tried, and convicted of conspiring to possess with the intent to distribute cocaine, possession with the intent to distribute cocaine, and possession of a firearm during and in relation to a drug trafficking crime.

## II.

### A. Sufficiency of the Evidence

Perez claims that the evidence is insufficient to sustain his firearm conviction. Perez also argues that the government did not produce sufficient evidence to show that he possessed cocaine or that he conspired to distribute cocaine.

■ We will uphold Perez's conviction if after we review all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of these crimes beyond a reasonable doubt. *United States v. Montgomery*, 23 F.3d 1130, 1994 U.S.App. LEXIS 9552 (7th Cir.1994).

■ We begin with Perez's firearm conviction. The relevant statute provides, in pertinent part, that:

> [w]hoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years.

18 U.S.C. § 924(c)(1). Section 924(c)(1), as its language indicates, required the government to prove two things in this case: (1) that Perez used or carried a firearm; and (2) that Perez used or carried a firearm during and in relation to his drug trafficking crimes. *Smith v. United States*, —— U.S. ——, ——, 113 S.Ct. 2050, 2053, 124 L.Ed.2d 138 (1993); *United States v. Windom*, 19 F.3d 1190, 1199 (7th Cir.1994).

■ When Congress enacted section 924(c)(1), it employed the term "use" expansively. *Smith*, —— U.S. at ——, 113 S.Ct. at 2058. Indeed, section 924(c)(1) does not require that a defendant brandish or fire a gun. It is sufficient if the gun increases the likelihood of success of the drug offense as a means of protection or intimidation, if the gun is available to provide protection, or if the gun provides a heightened sense of security to a defendant. *Windom*, 19 F.3d at 1199; *United States v. Carson*, 9 F.3d 576, 582 (7th Cir.1993); *United States v. Vasquez*, 909 F.2d 235, 239 (7th Cir.1990), *cert. denied*, 501 U.S. 1217, 111 S.Ct. 2826, 115 L.Ed.2d 996 (1991).

These are not difficult standards to satisfy when, as in this case, a properly conducted search of a defendant's home produces illegal drugs (here, cocaine), guns, ammunition, scales for weighing cocaine, cutting agent for cocaine, and other paraphernalia related to drug dealing. *See, e.g., United States v. Villagrana*, 5 F.3d 1048, 1051–52 (7th Cir. 1993) (conviction for violation of section 924(c) sustained after government agents found in defendant's bedroom a .44 magnum revolver, a triple beam scale for weighing cocaine, plastic packaging bags, and cocaine). In Perez's case, we have no difficulty concluding that the two handguns which the government seized from Perez's Milwaukee home increased the likelihood of success of Perez's drug offense as a means of protection or intimidation, were available to provide protection, and provided a heightened sense of security to Perez. The evidence is easily sufficient—in fact, it is overwhelming. We affirm Perez's conviction for violating section 924(c)(1).

■ Perez argues next that the evidence is insufficient to support (1) his conviction for possession with the intent to distribute cocaine and (2) his conspiracy conviction. The record refutes both of these claims. For example, the November 14, 1990 search produced voluminous evidence of Perez's participation and involvement in a drug ring that also included Viart, Concepcion, William and Alicia Small, and Gato. The evidence included: cocaine itself, Western Union money transfers from "Bernardo Cartagina" to Viart, Perez's driver's license, testimony by Viart and Gloria Martin about Perez's involvement in this drug-dealing scheme, two handguns, cocaine mailed to Perez's home, Perez's identification cards, an address book which contained Viart's Miami telephone number, and a beeper number that corresponded to a beeper found at the Small's Milwaukee residence. These are just a few examples. We could go on, but the point is made.

The evidence was sufficient to link Perez to his Milwaukee house, to establish that he possessed cocaine with the intent to distribute it, and to prove that he conspired to distribute cocaine. We affirm his convictions for conspiring to possess with the intent to

distribute cocaine and for possession with the intent to distribute cocaine.

### B. Admission of Coconspirator Statement

■ Perez next complains that the district court erred when it admitted a statement of Perez's coconspirator William Small. At trial, Gloria Martin testified at length about the drug-dealing activities of William and Alicia Small. Martin explained to the jury that she carried shopping bags filled with drugs for William Small. She also said that Perez, whom she called "Jungo," paid Small money. When asked why Perez paid Small money, Martin responded that "[o]ne time [Small] told us that he had given drugs to Jungo." She added that by drugs she meant cocaine.

Perez argues that the district court improperly admitted Small's statement through Martin's testimony. In particular, Perez says that the court misapplied Federal Rule of Evidence 801(d)(2)(E). That rule provides, in relevant part, that a "statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R.Evid. 801(d)(2)(E).

■ We review the district court's admission of Small's statement pursuant to Rule 801(d)(2)(E) for clear error. *United States v. Ford*, 21 F.3d 759, 763 (7th Cir. 1994). A district court may rely on Rule 801(d)(2)(E)'s coconspirators statement rule if it finds by a preponderance of the evidence that (1) the declarant and the defendant were members of the same conspiracy; (2) the conspiracy existed at the time the statement was made; and (3) the statement was made in furtherance of the conspiracy. *Id.* at 763; *United States v. Mahkimetas*, 991 F.2d 379, 382 (7th Cir.1993).

The evidence in this case with respect to Small's statement satisfies the requirements of Rule 801(d)(2)(E). First, the evidence clearly showed that Perez and Small were members of the same conspiracy. Payments between the two, which Martin observed and described to the jury, strongly indicate that they conspired to distribute cocaine. Small's statement as recounted by Martin demon-

strates that the payments were part of the ongoing drug-distribution ring. And Martin, who helped Small distribute drugs, detailed how Small made the challenged statement during the course of their drug dealing. Other evidence—the testimony of Viart, in particular—established that Perez and Small conspired together to distribute cocaine.

The district court properly admitted the challenged statement.

### C. Perez's Sentence

■ The government concedes, and Perez agrees, that the findings by the district court are not sufficient to support the court's sentencing calculations under the United States Sentencing Guidelines. We agree and remand the case to the district court for resentencing. On remand, the district court should make specific findings as to the relevant quantity of drugs that are attributable to Perez. *See, e.g., United States v. Montgomery*, 990 F.2d 266, 269 (7th Cir.1993) (noting that a sentencing court must make a specific finding of the relevant quantity of drugs, supported by the evidence, before setting the base offense level); *United States v. Goines*, 988 F.2d 750, 775, 777 (7th Cir.) (same), *cert. denied*, —— U.S. ——, ——, ——, 114 S.Ct. 241, 483, 558, 126 L.Ed.2d 195, 433, 458 (1993).

### III.

We AFFIRM Perez's convictions. We VACATE Perez's sentence and REMAND the case to the district court for resentencing.