UNITED STATES of America,
Plaintiff–Appellee,

v.

**Jesse SANDERS, Defendant–Appellant.**

No. 92–1872.

United States Court of Appeals,
Seventh Circuit.

Argued April 13, 1994.

Decided Aug. 12, 1994.

Steven M. Biskupic, Asst. U.S. Atty., Milwaukee, WI (argued), for U.S.

Edward John Hunt, Milwaukee, WI (argued), for Jesse Sanders.

Before CUMMINGS, EASTERBROOK, and MANION, Circuit Judges.

MANION, Circuit Judge.

Jesse Sanders was convicted by jury of conspiracy to possess over 500 grams of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), possession with intent to distribute 900 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) and using a firearm during and in relation to these drug offenses in violation of 18 U.S.C. § 924(c). On appeal, Sanders challenges the sufficiency of the evidence supporting his conspiracy and firearms convictions. He also throws in a challenge to the effectiveness of trial counsel. For the following reasons, we reject Sanders' contentions and affirm the jury's verdicts.

## I.

On June 14, 1991, Milwaukee police, acting pursuant to a warrant, executed a search at a residence located at 3371A North 2nd Street in Milwaukee, Wisconsin. The only person at the residence at the time of the search was Raymond Harvey. During the course of the

search, police discovered in the living room three plastic bags which together contained over 900 grams of cocaine. One of these bags, which contained 280 grams of cocaine, bore a fingerprint which tests demonstrated matched those of Jesse Sanders. A search of the kitchen turned up three scales, a .22 caliber semiautomatic pistol and an additional 16.8 grams of cocaine. In one of the bedrooms, later identified as Harvey's, police found a .38 revolver, ammunition for the same and a pager. The police next came to a second bedroom which, it turned out, was secured by padlocks from the inside of the bedroom. (The record does not indicate how whoever padlocked the door got out of the room.) After breaking down the door, the police discovered an ID card bearing Sanders' picture, a receipt signed by Sanders from a home security company for the padlocked door, a phone bill for the home in Sanders' name, two checks made payable to Sanders, a .32 semiautomatic pistol and approximately $9,400.00 in cash, mostly in small bills.

A federal grand jury returned a three-count indictment against Sanders and Harvey. Count I charged both with knowingly conspiring between themselves, along with others unknown to the grand jury, to possess with intent to distribute over 500 grams of cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 18 U.S.C. § 2. Count II charged both with knowingly possessing with intent to distribute approximately 900 grams of a mixture containing cocaine, in violation of 21 U.S.C. § 841(a)(1). Count III charged both with possessing firearms, specifically, a .22 caliber semiautomatic pistol, a .38 revolver and a .32 caliber semiautomatic pistol, during and in relation to the commission of the drug trafficking offenses set forth in Counts I and II, in violation of 18 U.S.C. § 924(c). Harvey pleaded guilty to Counts II and III. Sanders pleaded not guilty and proceeded to trial.

At Sanders' trial, Harvey testified for the government pursuant to his plea agreement. He testified that he had moved in with Sanders a month before the search. Harvey testified that he knew, at least a year before moving in, that Sanders was a drug dealer. He testified that there were various scales and drugs scattered throughout the house when he moved in. He also testified that he sold some of those drugs when Sanders was not home to handle the sales. In fact, it was one of Harvey's sales to a confidential informant that gave rise to the search of the Milwaukee residence.

As an alibi, Sanders argued that he never lived at the Milwaukee residence. He testified, and called several witnesses to confirm, that he had moved to Colorado shortly before the search. Sanders claimed that he had put the phone service in his name as a favor to Harvey who could not get the service put in his own name. Sanders stated that he had visited the Milwaukee residence occasionally with some friends, and that during one of these visits he might have touched a plastic bag which, according to him, would explain how his fingerprints wound up on a baggie containing cocaine. Sanders, however, had no explanation why the phone bill bearing his name, along with the two checks made payable to Sanders, the invoice from the security company and the ID card bearing Sanders' photograph, were found in the locked bedroom to which no one else had access. The jury thus rejected Sanders' alibi and promptly returned convictions against him on all three counts.

Following denial of Sanders' post-trial motions, the district court sentenced Sanders to prison terms of six years each on Counts I and II, to be served concurrently, followed by a five-year consecutive sentence under Count III, for a total prison term of eleven years.

## II.

### A. Sufficiency of the Evidence

Sanders challenges the sufficiency of the evidence supporting his conspiracy and firearms convictions. Sanders has his work cut out for him because when reviewing such a challenge, " 'we consider the evidence presented at trial in the light most favorable to the government; if we conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we will reject the defen-

dant's sufficiency challenge.'" *United States v. South,* 28 F.3d 619, 626 (7th Cir.1994) (quoting *United States v. Davis,* 15 F.3d 1393, 1397 (7th Cir.1994)).

### 1. *Conspiracy under § 846.*

■ A conspiracy "is a combination or confederation of two or more persons formed for the purpose of committing, by their joint acts, a criminal act." *United States v. Johnson,* 26 F.3d 669, 684 (7th Cir.1994); *accord South,* 28 F.3d at 627. To obtain a conviction for conspiracy under § 846, the government must establish "the existence of an agreement between two or more individuals, with the intent to commit an offense in violation of the Controlled Substance Act." *United States v. Martinez,* 937 F.2d 299, 303 (7th Cir.1991) (quotations omitted) (citations omitted). The government need not establish the existence of such an agreement by direct evidence; instead, a conspiratorial agreement may be proved entirely by circumstantial evidence. *See Martinez,* 937 F.2d at 304.

Sanders submits there is no evidence in the record supporting the jury's determination that there was an agreement between him and Harvey to distribute cocaine. He argues that the government presented no evidence demonstrating, for example, what roles he and Harvey played in this conspiracy, or how profits from sales of cocaine were to be split. Indeed, Sanders claims that the evidence actually demonstrates that Harvey was working *against* him, insofar as Harvey's testimony suggests that he may have been making unauthorized sales from Sanders' stash and then pocketing the proceeds. Therefore, Sanders claims that the record, at best, merely demonstrates the spot-dealing of two independent dealers who had no interest in the other's success, and that this is insufficient to prove the existence of, much less Sanders' participation in, a conspiracy.

■ Although we agree that the government's evidence in this case could have been better developed, we nonetheless conclude that it is sufficient to support the jury's determination that a conspiracy existed and that Sanders was part of it. Harvey testified that there was cocaine in the house when he moved in and that it belonged to Sanders.

He testified that he would mix Sanders' cocaine with a cutting agent, Mannitol, which was also present at the apartment when he moved in. He also testified that he sold this cocaine mixture to customers who came to the house. Contrary to Sanders' assertions, there is nothing in Harvey's testimony suggesting that his sales were without Sanders' permission. Thus, from Harvey's testimony the jury could have reasonably inferred that Harvey was making these sales on Sanders' behalf and therefore that the two were working together to distribute Sanders' cocaine. In sum, this circumstantial evidence is sufficient to sustain the jury's conspiracy conviction.

### 2. *Firearm conviction under § 924(c).*

■ Sanders next challenges his conviction under § 924(c), arguing that the evidence is insufficient to demonstrate that he used or carried any of the firearms discovered at the Milwaukee residence at all, much less that he did so in relation to a drug trafficking offense. To prove that Sanders violated § 924(c), the government had to show that he: (1) used or carried a firearm; and (2) that he used or carried the firearm during and in relation to his drug trafficking offenses. *See United States v. Perez,* 28 F.3d 673, 676 (7th Cir.1994); *accord United States v. Villagrana,* 5 F.3d 1048, 1051 (7th Cir.1993). To prove use of a firearm under § 924(c), it is sufficient if the government establishes that "the gun increases the likelihood of success of the drug offense as a means of protection or intimidation, ... is available to provide protection, or ... provides a heightened sense of security to a defendant." *Perez,* 28 F.3d at 676 (citations omitted); *accord Villagrana,* 5 F.3d at 1052.

Sanders first argues that he was not able to use or carry the firearm under § 924(c) because he was in Colorado during the time of the drug trafficking offenses. Of course this is nothing more than a rehash of his alibi defense which the jury rejected. We will not revisit the jury's determination that Sanders resided at and conducted his drug offenses at the Milwaukee residence.

Sanders next contends that because Harvey never testified that he saw Sanders with a firearm during any of the drug transactions at the Milwaukee residence, this further underscores his claim that the government presented no evidence that he used or carried a firearm within the meaning of § 924(c). Yet "[t]he fact that [Sanders] never brandished, fired, or referred to the gun[ ] during the drug transaction is immaterial." *United States v. Villarreal*, 977 F.2d 1077, 1079 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1350, 122 L.Ed.2d 731 (1993) (quotations omitted) (citations omitted). Here a .32 semiautomatic pistol, ammunition for the same and over $9,400 in cash were found in Sanders' locked bedroom. From this evidence the jury could reasonably conclude that Sanders used the gun to protect the proceeds of his drug transactions, thus providing him with a heightened sense of security. This is enough to sustain his conviction under § 924(c). *See Perez*, 28 F.3d at 676; *accord Villagrana*, 5 F.3d at 1052; *Villarreal*, 977 F.2d at 1079.

## B. Ineffective Assistance of Counsel

Understanding Sanders' final argument requires a few more facts. The night before Sanders' trial, Harvey and his brother were having a telephone conversation when Sanders called Harvey's brother wishing to speak with Harvey. Harvey's brother then arranged through the three-way calling function for him, Sanders (who at the time was in the presence of his trial counsel, Mr. Murray), and Harvey to speak together on the telephone. The purpose of Sanders' call is not at all clear from the record before us. However, the record does reveal that during his cross-examination of Harvey, Sanders' trial counsel attempted to attribute to Harvey statements he had purportedly made during that telephone conversation which trial counsel apparently believed would contradict Harvey's motivations for testifying and thus undermine his credibility. Harvey, however, repeatedly denied making such statements and Sanders' trial counsel did not pursue the matter further.

On appeal, Sanders contends that his attorney's failure to withdraw as trial counsel and testify concerning statements Harvey made during the telephone conversation constituted ineffective assistance of counsel. Sanders claims that trial counsel's failure to testify concerning Harvey's inconsistent statements deprived Sanders of an opportunity to undermine Harvey's credibility and thus deprived him of a fair trial.

Normally, we would hesitate to address claims of ineffective assistance of counsel on direct appeal since such claims usually " 'cannot be evaluated without an evidentiary hearing at which the lawyer is asked to explain why he did not follow seemingly promising lines of defense.' " *South*, 28 F.3d at 629 (quoting *Guinan v. United States*, 6 F.3d 468, 471 (7th Cir.1993)). However, we need not concern ourselves with this issue here as it cannot be said that trial counsel's failure to testify in any way resulted in an unfair or suspect verdict, the essence of an ineffective assistance claim. *See Durrive v. United States*, 4 F.3d 548, 550 (7th Cir.1993). From our review of the transcript, we conclude that Sanders' trial counsel was merely trying to establish the unremarkable proposition that Harvey would receive a recommendation for a shorter sentence in exchange for his truthful testimony at Sanders' trial. Yet the government had already brought this to the jury's attention during its direct examination of Harvey. Given this, trial counsel's failure to withdraw from representing Sanders and testify on his behalf did not result in an unfair trial. Consequently, Sanders' trial counsel's performance in no way rose to the level of prejudice required under the Sixth Amendment to upset Sanders' conviction.

## III.

Sanders' conspiracy and firearms convictions are

AFFIRMED.