52 F.3d 328
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Edgar ROSA, Defendant-Appellant.
 No. 94-3401.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 9, 1995.
Decided April 19, 1995.
 
 Before Fairchild, Cummings and Cudahy, Circuit Judges.
 
 ORDER
 
 1
 Edgar Rosa pled guilty to knowingly and intentionally possessing with intent to distribute in excess of 5 grams of a mixture containing cocaine base in violation of 21 U.S.C. 841(a)(1) and was convicted by a jury of using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c). The district court sentenced Rosa to a prison term of 157 months. Rosa appeals both his conviction and his sentence.
 
 I. BACKGROUND
 
 2
 On July 2, 1993, agents from the Bureau of Alcohol, Tobacco and Firearms (ATF) received an anonymous phone call on the ATF Hotline stating that two Puerto Rican males were selling crack cocaine in the 2800 block of North Holton Street in Milwaukee, Wisconsin. On July 7, 1993, agents from the ATF made a controlled purchase of cocaine from 2800 North Holton Street. A search warrant was subsequently issued by the Magistrate Judge and on July 8, 1993 agents executed a search warrant at the 2800 and 2802 North Holton Street duplex residence.
 
 
 3
 Edgar Rosa was arrested in the lower unit, 2800 North Holton Street. A total of 13.4 grams of cocaine base was recovered from the residence. Twenty-seven individually packaged baggies containing cocaine base, a larger uncut rock of cocaine base, a razor blade, empty baggies and scissors were recovered from the kitchen table. An additional fifteen baggies containing cocaine base concealed in a heating pad were recovered from the kitchen area. Approximately twelve hundred dollars were found in a kitchen cabinet above the heating pad and seized. Some of the currency had the same serial numbers as money used in the July 7, 1993 controlled purchase. A loaded .380 caliber semiautomatic firearm and a partly full box of ammunition were recovered from the top drawer of a buffet hutch in the dining room area. The drawer was about waist high, ajar and pulled out some. The ammunition was in a plastic bag and both the firearm and ammunition were contained in a paper bag. There was no evidence concerning fingerprints on the gun. A gun cleaning kit was also found in Rosa's bedroom closet. Rosa testified that the kit, which could be used to clean a gun of the caliber seized from the hutch, had been a gift from his brother.
 
 
 4
 Darrin Kozlowski, a special agent with the ATF, advised Rosa of his rights under Miranda and began to question Rosa at the residence. Rosa stated he did not wish to continue being questioned at the residence and was transported to the Milwaukee County Drug Unit. An agent fluent in Spanish was available (and was present part of the time), but the agents determined that the questioning could continue in English. Rosa stated that he had been using cocaine base for about one year and that he had been selling cocaine base for approximately six months. He admitted that the cocaine base at the residence belonged to him.
 
 
 5
 Rosa was also questioned about the gun seized during the search. Agent David J. Darin testified that Rosa said he had purchased the gun from an unknown party on the street for eighty dollars and that he had given the gun to a friend named Jeff who kept it for a period of time and had just returned it to him. Agent Darin also testified that Rosa stated he had the gun because he "didn't want to get ripped off." At trial, Rosa testified that "This was the first time I have ever laid eyes on that pistol." He said he had never bought nor owned the gun and was in a different room when the agents found it. There were a number of people in his house before the agents came. He denied making the statements about the gun attributed to him by the agents. He believed that Tony Oliver, called "Blue", had brought the gun to his house and the only name he told the agents was Blue. Rosa did not know why Blue put the gun in the drawer; he used to know where Blue lived, but did not know at the time of the trial.
 
 
 6
 On August 24, 1993, a federal grand jury returned a two count indictment; Count One charged Rosa with knowingly and intentionally possessing with the intent to distribute a mixture in excess of five grams of cocaine base in violation of 21 U.S.C. Sec. 841(a)(1); and Count Two charged Rosa with using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c). On November 1, 1993, Rosa entered into a guilty plea to both charges. Rosa was allowed to withdraw his guilty plea as to Count Two on July 19, 1994 by order of the district court. On September 8, 1994, after a two day jury trial, Rosa was convicted of Count Two of the indictment.
 
 
 7
 The district court sentenced Rosa to 157 months' imprisonment, 97 months as to Count One and 60 months as to Count Two, to be followed by a five-year period of supervised release. The district court also directed Rosa to pay a $1,000.00 fine along with a special assessment of $50.00. Rosa appeals.
 
 II. SECTION 924(C) CONVICTION
 
 8
 Rosa argues that there was insufficient evidence to sustain his conviction for using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c). We review a jury verdict in the light most favorable to the government and will not overturn a verdict unless there is no evidence from which the jury could find guilt beyond a reasonable doubt. United States v. Perez, 28 F.3d 673, 676 (7th Cir.1994); United States v. Villagrana, 5 F.3d 1048, 1051 (7th Cir.1993). Section 924(c) provides a penalty for one who "uses or carries a firearm," "during and in relation to any ... drug trafficking crime...." 18 U.S.C. Sec. 924(c). The cases have construed "uses" broadly and have not required proof that the firearm was fired, brandished or referred to in a threat, but have held that the firearm must facilitate the offense in some way. Smith v. United States, 113 S.Ct. 2050, 2058 (1993) (exchange of a gun for narcotics consists of use during and in relation to a drug trafficking crime).
 
 
 9
 Possession of a firearm qualifies as "use" under Sec. 924(c), "if the gun increases the likelihood of success of the drug offense as a means of protection or intimidation, if the gun is available to provide protection, or if the gun provides a heightened sense of security to a defendant." Perez, 28 F.3d at 676. Thus, a drug dealer who keeps a gun in strategic proximity to the drugs, tools of the drug trade or proceeds from the trade uses the gun in relation to the drug trafficking crime for purposes of Sec. 924(c)(1). The district court accepted Special Agent Hays as an expert in the relationship of firearms to drug related offenses. He described the needs drug dealers have for weapons and opined that the gun in this case was "strategically located." Agent Hays testified that: "[the gun] can be used here. He's close to the money, he's close to the drugs, and probably if there's business or drug dealing being conducted out of the house, more than likely it's done through the hallway and he would be meeting or greeting potential customers at this point." (Tr. Vol.I, p. 142).
 
 
 10
 A number of the factors which this court considers in deciding if there was sufficient evidence to sustain a Sec. 924(c) conviction, such as whether the gun was loaded, its accessibility to the defendant or its proximity to other materials of the drug trade, were present in this case. See United States v. James, 40 F.3d 850, 868 (7th Cir.1994), cert. denied, 115 S.Ct. 948, 1160 (1995) (loaded pistol on dining room table within reach of defendant during search and loaded rifle within defendant's easy grasp as he exited bedroom where heroin was stored permitted inference that guns were used to protect heroin and facilitate drug trafficking); Sanders, 32 F.3d at 303 (.32 semiautomatic pistol and ammunition found in locked bedroom with over $9,400 in cash permitted inference that gun was used to protect proceeds of drug transaction); Perez, 28 F.3d at 676 (two handguns found along with cocaine, ammunition and paraphernalia related to drug dealing permitted inference that guns were used for protection or intimidation); Villagrana, 5 F.3d at 1051-52 (7th Cir.1993) (loaded revolver and ammunition found in bedroom along with drug packaging materials and $23,000 in cash permitted inference that firearm was used to protect defendant and cocaine when he prepared cocaine for distribution). When the search warrant was executed, Rosa was found in the archway separating the living room and dining room. The gun was found in the dining room area in proximity both to the kitchen, where the drugs were prepared and packaged, and the front entrance way. The gun was loaded and in a bag containing extra ammunition. In addition, the jury heard testimony that Rosa had admitted purchasing the gun on the street for eighty dollars, loaning the gun to friend who had just returned it and keeping the gun for protection so that he would not get "ripped off," alongside Rosa's testimony denying making these statements, denying any knowledge of the gun's presence in his residence and stating that he believed Blue (Tony Oliver) had left the gun there. The jury could have reasonably inferred from all of the evidence that the gun was Rosa's and that he used the gun to facilitate his drug trafficking crime.
 
 III. ACCEPTANCE OF RESPONSIBILITY
 
 11
 Under Sec. 3E1.1, a defendant is entitled to a reduction in his offense level only if he "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his offense." U.S.S.G. Sec. 3E1.1(a). See also United States v. Curtis, 37 F.3d 301, 309 (7th Cir.1994), cert. denied, 115 S.Ct. 1110 (1995); United States v. Panadero, 7 F.3d 691, 694 (7th Cir.1993). A defendant who has "both gone to trial and obstructed justice, must overcome quite a strong presumption to convince a court that he still is entitled to a reduction for acceptance of responsibility." Curtis, 37 F.3d at 309. See U.S.S.G. Sec. 3E1.1 App. Note 2 (only in "rare situations" can a defendant put the government to its burden of proof at trial and still qualify for a reduction); U.S.S.G. Sec. 3E1.1. App. Note 4 (only in "extraordinary cases" can a defendant receive an enhancement for obstruction of justice and still qualify for a reduction). In addition, "this court has upheld the refusal to grant a reduction when the defendant engages in criminal activity that is the same or similar to the charges pending against him." United States v. McDonald, 22 F.3d 139, 142 (7th Cir.1994). See also Panadero, 7 F.3d at 694; United States v. Franklin, 902 F.2d 501, 506 (7th Cir.) cert. denied, 498 U.S. 906 (1990).
 
 
 12
 Here, the only rare or extraordinary aspect of Rosa's circumstances is that he could erect so many barriers to receiving a reduction for acceptance of responsibility. Rosa obstructed justice by failing to appear for a sentencing hearing in April, 1994. This was at a time when his plea of guilty was to both counts. He violated the terms of his pre-trial release by continuing to use cocaine and tested positive for cocaine use on three occasions in January and February, 1994. On April 10, 1994, Rosa was arrested by the police at 2555 N. Holton Street for possessing a controlled substance with intent to deliver near a school. During a search of Rosa's residence, police recovered approximately 74.4 grams of cocaine; twenty-eight "corner cuts" of cocaine base were found on top of a rear bedroom dresser and a copy of the pre-sentence report in this case was found in the dresser's top drawer. Finally, Rosa put the government to its burden at trial as to Count Two of the indictment and he did not thereafter accept responsibility for that offense. We find no error in the district court's conclusion that Rosa had not accepted responsibility for his crime.
 
 IV. MOTION FOR A NEW TRIAL
 
 13
 Rosa argues that the trial court erred in denying his motion for a new trial based upon newly discovered evidence. Rosa claims that after his trial a witness came forward who was willing to admit ownership of the firearm found in his residence. Rosa's counsel submitted his own affidavit and accompanying report of an investigator's interview in support of the motion. The report dated September 27, 1994 indicated that an investigator located an individual, Johrie V. Dyess, who claimed that he had bought the gun on July 8, 1993 in an alley for $300. He decided he would prefer a smaller weapon and thought he would show the gun to Rosa and ask if Rosa would buy the gun for $350. He had met Rosa while working in Rosa's neighborhood and had visited him once in a while. About 2:00 pm he went to Rosa's home and asked Molly (Anabell), with whom Rosa lived, if he could talk with Rosa. After going to the back of the house Molly told him to return later as Rosa was busy. Dyess walked into the dining room and placed the firearm in the drawer of the buffet hutch where it was found. When Dyess returned an hour and a half later, he saw the government agent cars in front of the house and did not stop. Dyess stated that he told Rosa's family the gun was his and that he wanted to come forward and claim ownership. He did not say when he told this to the family.
 
 
 14
 A district court's denial of a motion for a new trial based on newly discovered evidence will be reversed only for an abuse of discretion. United States v. Reed, 2 F.3d 1441, 1451 (7th Cir.1993), cert. denied, 114 S.Ct. 898 (1994). To justify a new trial on the basis of newly discovered evidence, a defendant must show that the evidence: (1) came to his knowledge only after trial; (2) could not have been discovered sooner through the exercise of due diligence; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a new trial. United States v. Gootee, 34 F.3d 475, 479 (7th Cir.1994); United States v. Lockhart, 956 F.2d 1418, 1426 (7th Cir.1992). The district court denied Rosa's motion for a new trial finding both that the evidence was within Rosa's knowledge at the time of the trial and that it could have been easily discovered through the exercise of due diligence.
 
 
 15
 We agree with the district court that it is rather implausible that the identity of Dyess, a man known to Rosa, who talked with Rosa's companion only an hour before the search, did not come to light, or could not have been discovered with a modicum of diligence, prior to the trial. Counsel's affidavit said that Rosa had not indicated the identity of Dyess until after the verdict and did not explain why Rosa was not aware earlier of Dyess. Over a year elapsed between the seizure of the firearm on July 8, 1993 and the trial, September 7 and 8, 1994. Rosa's motion to withdraw his plea of guilty as to Count Two was filed on June 21, 1994 and granted on July 19, 1994. We find no abuse of discretion in the district court's denial of Rosa's motion for a new trial. Given Rosa's admissions concerning the gun and his story about Jeff, as recounted to the agents, Rosa's own testimony at trial concerning Blue and the gun and the peculiarity of Dyess' account of his actions, to which he presumably would have testified, we do not believe that Dyess' testimony at a new trial would probably lead to acquittal.
 
 V. CONCLUSION
 
 16
 We AFFIRM Rosa's conviction and sentence.