**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert W. CURLEY, Defendant–**
**Appellant.**

No. 94–2379.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 24, 1995.

Decided May 12, 1995.

Steven Pray O'Connor, Asst. U.S. Atty., Madison, WI (argued), for U.S.

William J. Stevens (argued), Barry D. Sheppard, Chicago, IL, for Robert W. Curley.

Before POSNER, Chief Judge, and BAUER and ROVNER, Circuit Judges.

BAUER, Circuit Judge.

A jury convicted Robert Curley of conspiring to possess marijuana with intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1), 846. For this offense, the district court sentenced Curley to ninety-two months in the penitentiary and fined him $12,500. On appeal, Curley makes a number of challenges with respect to his conviction and sentence. Finding none of the challenges meritorious, we affirm.

During the summer of 1988, Damien Connolly, an acquaintance of Curley's, sought to smuggle marijuana from Jamaica to the United States with the intention of selling it in southern Wisconsin. Connolly enlisted Curley's assistance to accomplish his objective; Curley had apparently supplied Connolly with marijuana previously. Curley then arranged for contacts in Jamaica to supply the quantity of marijuana Connolly sought.

In July 1988, Connolly, Curley, and others met in Jamaica and arranged to smuggle the marijuana to the United States. During the course of making these arrangements, Connolly called his girlfriend (now his estranged wife), Dawn Rexroate, and ordered her to fly to Jamaica with the $40,000 necessary for a down payment on the marijuana; Rexroate did so. While in Jamaica, Rexroate stayed with Connolly, who shared a two-bedroom suite with Curley. Rexroate and Connolly socialized with Curley and other members of the conspiracy during their stay in Jamaica. Connolly also told Rexroate that Curley was responsible for procuring the marijuana.

Curley arranged for his contacts to deliver the marijuana to a boat, which then sailed to the United States. It is not clear whether Curley also arranged for the boat and its crew or simply established the source of the marijuana and had it put aboard the boat. The boat was sailed to Beaufort, North Carolina, where Connolly and a friend, Mark Dorman, transferred the marijuana to a recreational vehicle belonging to Connolly. From there, two men who had previously participated in Connolly's drug operations, Tom Morgan and David Van Arsdale, drove the vehicle to Madison, Wisconsin, on August 11, 1988.

On that day, Curley, with an Uzi submachine gun and a black Jamaican man (nick)named Wrench, went to Tom Morgan's house to demand payment from Connolly. Curley gave Connolly until 1:00 PM the next day to satisfy the debt. Connolly gathered

the funds necessary to satisfy his debt and on August 12, 1988, ordered Rexroate to drive Van Arsdale to Connolly's brother's apartment to deliver the payment to Curley. While there, Van Arsdale saw Curley count the money. Curley then separated out several bundles of bills and said: "This is for me." Curley put his share in a duffel bag, which also contained a pistol.

Later that month, Curley visited Connolly and Rexroate at their home and discussed the transaction. Curley explained his hostile and threatening demand for payment as "a show for the Jamaicans." At this meeting, Connolly boasted to Rexroate that he and Curley had realized $100,000 as a result of their marijuana transaction.

■ Curley challenges his conviction on several grounds, but the central theme of his argument is that he had nothing to do with selling the marijuana on the street. According to Curley, since nothing linked him to the actual retail distribution of the marijuana, he cannot be convicted of conspiracy to distribute the marijuana. Curley's argument misses the boat.

First, Curley argues that the government presented insufficient evidence to support his conspiracy conviction. Curley has an onerous burden here; he must demonstrate that viewing the evidence against him in the light most favorable to the government, no reasonable jury could have found him guilty of conspiracy to distribute marijuana. To convict Curley of conspiracy, the government was required to prove the existence of an agreement between Curley and Connolly to violate the Controlled Substances Act, *see United States v. Sanders*, 32 F.3d 299, 302 (7th Cir.1994); the government did not have to prove that Curley participated in every phase of the conspiracy, it merely needed to prove that he committed some overt act furthering the conspiracy. *See United States v. Donovan*, 24 F.3d 908, 914 (7th Cir.1994). The government easily met its burden, and the jury acted reasonably in returning a guilty verdict.

Curley argues that the government failed to prove his membership in the conspiracy because it did not prove that he agreed to distribute the marijuana. He claims he had

very limited involvement in this operation and maintains that he merely brokered the sale of marijuana by Jamaicans to Connolly. Curley bases his argument entirely on our decision in *United States v. Lechuga*, 994 F.2d 346 (7th Cir.1993) (en banc), in which we held that the sale of "large quantities of controlled substances, without more, cannot sustain a conspiracy conviction." While this proposition retains its vitality, it is of little use to Curley. His case certainly concerns the sale of a large quantity of a controlled substance—literally a boatload of marijuana. Unfortunately for Curley, his case involves more than just a large transfer of drugs.

The evidence against Curley (principally the testimony of Rexroate and Van Arsdale) contradicts his claim that he did not join Connolly's band. The government's evidence demonstrated the following: Curley knew Connolly as early as 1987, if not earlier; they were apparent friends. Connolly needed a source of marijuana and recruited Curley to perform that critical function. Connolly knew that Curley had contacts in Jamaica through which he could procure the necessary quantity of marijuana.

Further, this was not some arms-length transaction, a simple anonymous buy-sell, as Curley would have us believe. Curley and Connolly shared a two-room suite in Jamaica while Curley made arrangements to obtain the marijuana. They also socialized daily with one another, as well as others involved in the conspiracy, during this trip. This socializing permitted the inference that the deal was being hatched right then. Finally, after ensuring the delivery of the marijuana and putting on the tough-guy performance to demand payment for the marijuana, Curley returned the following week to smooth his relationship with Connolly. Evidence of their relationship throughout the period of the conspiracy was manifest. Clearly, the jury had a rational basis for believing that Curley had agreed to participate in Connolly's conspiracy to distribute marijuana.

Curley is correct in stating that the government presented no evidence that Curley had anything to do with the retail distribution of the marijuana. To reiterate, however,

he need not have participated in every aspect of the conspiracy, just committed some overt act furthering it. Curley's role in Connolly's organization, arranging for the source of the marijuana, was a necessary part of this conspiracy and certainly constituted an overt act in its furtherance. The government's evidence, therefore, was easily sufficient to support Curley's conviction for conspiracy to distribute marijuana.

■ Curley next complains that he was entitled to receive an instruction informing the jury that it may not convict him unless it found that he had a "stake in the venture." That is, Curley could not be found guilty unless his compensation depended on Connolly's successful retail distribution of the marijuana.[1] As this argument simply rehashes Curley's argument that he had no part in selling the marijuana on the street, we reject it.

■ A defendant is entitled to an instruction on his theory of the case if he proposes a correct statement of the law, his theory is supported by the evidence, his theory of defense is not part of the charge, and the failure to include an instruction on his theory of defense in the jury charge would deny him a fair trial. *United States v. Boykins*, 9 F.3d 1278, 1285 (7th Cir.1993) (citations omitted). Curley's proposed instructions are not correct statements of law. The law does not require the government to prove that a defendant had a stake in a drug distribution venture to gain a conviction for conspiracy. *Direct Sales Co. v. United States*, 319 U.S. 703, 713, 63 S.Ct. 1265, 1270, 87 L.Ed. 1674 (1943). That a defendant had a stake in the success of the venture is simply one method among many of proving his participation in the conspiracy. *Id.*

The cases are replete with circumstances in which defendants have been convicted of conspiracy by performing tasks unrelated to selling drugs on the street. An obvious example is the mule who transports the drugs from one part of the country to another. *See, e.g., Donovan,* 24 F.3d at 914. Curley's case is another example. The key point is one that we have discussed: that the government need only prove that the defendant joined an agreement to distribute drugs. That was the substance of the conspiracy instructions in Curley's trial, and we therefore reject Curley's challenge to them.

■ Curley's third argument is that his prosecution was barred by the five-year statute of limitations, pursuant to 18 U.S.C. § 3282. He is mistaken. The statute of limitations runs from the last overt act in furtherance of that conspiracy. *United States v. Read,* 658 F.2d 1225, 1232 (7th Cir.1981). To comply with the statute, the government must prove that the conspiracy existed and the defendant was a member of the conspiracy at some point in the five years preceding the date of the indictment. *Grunewald v. United States,* 353 U.S. 391, 396, 77 S.Ct. 963, 969, 1 L.Ed.2d 931 (1957).

The indictment was returned on August 4, 1993. Curley received the payment for his role in the conspiracy on August 12, 1988. In addition, because Curley has not argued that he withdrew, in a legal sense, from the conspiracy at any point, acts in furtherance of Connolly's operation can be attributed to Curley even after the date of his payment. The statute of limitations, therefore, did not bar Curley's prosecution.

■ Similarly, Curley claims that his prosecution was improperly brought in the Western District of Wisconsin. Rule 18 of the Federal Rules of Criminal Procedure provides that "the prosecution shall be had in a district in which the offense was committed."

---

1. Specifically, Curley requested the following instructions:

   A person who has no stake in a venture which has as its object the possession and distribution of drugs is not a conspirator of those who agreed to possess and distribute drugs. In order for the government to prove that a defendant was a conspirator with others who agreed to possess and distribute drugs, it is necessary for the government to prove beyond a reason-

   able doubt that such person's fortunes would rise or fall with the success or failure of that conspiracy.

   A person is not a member of a conspiracy unless he has a stake in the venture. That is, unless he will profit by the achievement of the conspiracy. A person who merely aids and abets conspirators is not a member of the conspiracy.

Any district is proper where an act in furtherance of the conspiracy occurred. *United States v. Sax,* 39 F.3d 1380, 1390 (7th Cir. 1994). There is no question here that many acts furthering the conspiracy occurred in the Western District of Wisconsin, not the least of which was Connolly's payment to Curley.

 Curley also complains of certain statements made by the government in its closing argument. Only one is worthy of any attention. The government explained the absence of any stamps of entry to or exit from Jamaica on Curley's passport by implying that he travelled there under an assumed name with a phony passport. Because no objection was made to the comment, we review it for plain error. *United States v. Rose,* 12 F.3d 1414, 1424 (7th Cir.1994).

"There is no plain error where the prosecutor's argument is reasonably inferred from the evidence and the defense had a reasonable opportunity to respond." *Id.* (citation omitted). This is precisely the situation here as the prosecutor's comment constitutes an acceptable comment on the evidence. Rexroate gave extensive testimony of Curley's presence in Jamaica in July 1988. The prosecutor was simply attempting to reconcile her detailed testimony with the absence of any stamps on Curley's passport. Moreover, the defense had ample opportunity to present its own view of this fact. Consequently, we find no error.

 Finally, Curley challenges two aspects of his sentence. First, he claims that the district judge erred when it did not permit him a two-level decrease for acceptance of responsibility. Curley acknowledged his crime only after he was convicted. Acceptance of responsibility means that "the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." United States Sentencing Commission, *Guidelines Manual,* § 3E1.1(a). A defendant may demonstrate this by performing any number of expiatory acts. *United States v. Beserra,* 967 F.2d 254, 255 (7th Cir.1992) (citing USSG § 3E1.1, comment. (n. 1)). Except in rare circumstances, a plea of guilty is a necessary, if not a sufficient, condition for acceptance of responsibility. *United States v. Martinson,* 37 F.3d 353, 357 (7th Cir.1994). This is not such an instance and we find no error. *See* USSG § 3E1.1, comment. (n. 2).

 Second, Curley claims that the district judge erred in assessing him a two-level enhancement for possession of a firearm. We review such a claim for clear error. *United States v. Cantero,* 995 F.2d 1407, 1409 (7th Cir.1993). Here we find no error of any kind.

Section 2D1.1(b)(1) provides for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed." Application note 3 to that section states that the "adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Clearly, the testimony of Rexroate that Curley brandished a gun when he demanded payment and the testimony of Van Arsdale that Curley had a gun in his bag when Van Arsdale delivered the money support the district judge's finding that Curley possessed a firearm. Curley's sentence was appropriate in every respect.

For the foregoing reasons, Curley's conviction for conspiracy to distribute marijuana and sentence are

AFFIRMED.