UNITED STATES of America,
Plaintiff–Appellee,

v.

Ricardo VILLAGRANA and Jose Gasca,
Defendants–Appellants.

Nos. 91–3740 and 92–1521.

United States Court of Appeals,
Seventh Circuit.

Argued May 3, 1993.

Decided Sept. 21, 1993.

Rehearing and Suggestion for Rehearing
En Banc Denied Dec. 1, 1993.

Helene B. Greenwald, Barry R. Elden, Asst. U.S. Attys., Madeleine S. Murphy, Asst. States Atty. (argued), Criminal Div., Chicago, IL, for U.S.

Daniel E. Radakovich (argued), James La-Vecchia, Chicago, IL, for Ricardo Villagrana.

John Thomas Moran, Jr. (argued), Chicago, IL, for Jose Gasca.

Before CUDAHY, FLAUM and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Ricardo Villagrana and Jose Gasca were convicted of various offenses stemming from their involvement in a cocaine conspiracy. On appeal, Gasca challenges the sufficiency of the evidence supporting his conviction for using a firearm during and in relation to the commission of his drug trafficking crimes, in violation of 18 U.S.C. § 924(c). Villagrana contends that the district court's jury instructions did not correctly state the government's burden of proof under the *Pinkerton*

doctrine, thus mandating the reversal of his § 924(c) conviction. He also raises various challenges to his sentence. Finding their arguments unpersuasive, we affirm both defendants' convictions and sentences.

## I. *Background*

With the assistance of several others, Villagrana and Oscar Barraza teamed up to purchase 100 kilograms of cocaine in Los Angeles and transport it to Aurora, Illinois for distribution. They planned to carry the cocaine in three cars equipped with secret compartments. Upon its arrival in Aurora, Gasca would cut the load of cocaine into smaller portions for distribution, a task that he had previously performed for Villagrana.

On October 26, 1990, several of the conspirators assembled in Aurora to begin a trip to obtain the cocaine. Villagrana and Barraza departed for El Paso, Texas, where they would pay for the shipment. Villagrana directed Efrain Fonseca, Martin Gonzalez, Baltazar Guevera, and Amilia Tovar to drive two other cars directly to California. On October 29, Villagrana and Barraza rendezvoused in Los Angeles with the individuals who had driven the other cars, and the next day they were joined by Emerio Fonseca and two additional men. On November 2, the group took delivery of the cocaine. Because only fifty of the 100 kilograms were available at that time, Villagrana and Barraza decided to leave one car in California to transport the remaining fifty kilograms at a later date. Loaded with the cocaine, the other two cars departed for Chicago.

The cocaine shipment safely made its way to Chicago, and Villagrana met the men driving the two cars at a restaurant in Aurora. With Guevera and Villagrana in one car and the Fonseca brothers in the other, they proceeded to Gasca's apartment to have him cut two kilos of cocaine for distribution. Upon their arrival at Gasca's apartment, Villagrana told him to take only one kilo at a time from the car to his apartment for cutting.

At this point, a seemingly successful operation went sour. Villagrana and Guevera drove away and were soon arrested. Gasca left the Fonseca brothers, who remained in their car, and went into his apartment. Approximately fifteen minutes later, Gasca returned to the car with a package, which police later determined was the wrapping from a kilo of cocaine. At that point, the police moved in and arrested him as well as the Fonsecas.

A search of the bedroom in Gasca's apartment revealed a loaded .44 magnum handgun, which Gasca admitted was his. The gun, which was enclosed in leather case, and a box of ammunition were found on the floor between the nightstand and the bed. A triple beam scale and a box of plastic bags were located in the center of the floor, upon which was scattered slightly less than one gram of cocaine. A dresser in the room contained over $23,000 in cash and a large gold necklace. The officers also found a bag containing between an ounce and half and two ounces of cocaine in a boot in the closet, and Gasca turned over four bags of cocaine that he was carrying in his jacket.

Upon searching the Fonsecas' car, the arresting officers found packages of cocaine hidden between the interior and exterior walls. Also, in the lower portion of the back seat, a .22 caliber revolver was found.

A grand jury returned a six count indictment against Villagrana and Gasca, as well as others involved in the conspiracy. Counts I and II charged that Villagrana and Gasca had conspired to possess with the intent to distribute and to distribute approximately 50 kilograms of cocaine in violation of 21 U.S.C. § 846, and that both defendants knowingly and intentionally possessed with the intent to distribute approximately 50 kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1). Villagrana, but not Gasca, was charged in Count III with violating 18 U.S.C. §§ 2 and 1952 by traveling from California to Illinois with the intent to commit the offense alleged in Counts I and II. The jury convicted Villagrana of the crime alleged in all three counts and Gasca of the crimes alleged in Counts I and II.

The indictment also included three charges of possessing a gun during and in relation to the commission of the drug trafficking crimes set forth in Counts I and II, a violation of 18 U.S.C. § 924(c). Villagrana was charged in

Count IV with possessing a .38 caliber revolver, and in Count V with possessing the .22 caliber revolver found in the car the Fonseca brothers drove the night of their arrest. The jury acquitted him of the charge in Count IV, but convicted him of the crime alleged in Count V. Finally, as charged in Count VI of the indictment, Gasca was convicted of possessing the .44 caliber revolver the police recovered in the search of his apartment.

The defendants' post-trial motions were denied, and the district court sentenced Villagrana to 60 months imprisonment for his firearm charge, to run consecutively with the 360 months imprisonment he received for his other crimes. Gasca received a sentence of 78 months imprisonment for his conspiracy and possession convictions, and four years supervised release for his § 924(c) offense.

## II. *Gasca's § 924(c) Conviction*

■ Gasca appeals his § 924(c) violation, arguing that insufficient evidence existed to convict him of using, in relation to his drug trafficking crimes, the .44 magnum revolver found in his bedroom. He has a difficult task. "A verdict will withstand a sufficiency of the evidence challenge unless there is no evidence from which the jury could find guilt beyond a reasonable doubt." *United States v. Caudill*, 915 F.2d 294, 297 (7th Cir.1990). Furthermore, "[w]e review all the evidence in the light most favorable to the [g]overnment." *United States v. Woods*, 995 F.2d 713, 717 (7th Cir.1993).

■ To prove Gasca violated § 924(c), the government was required to show that he used or carried a firearm and that the use or carrying occurred "during and in relation to" his participation in the drug conspiracy which resulted in his § 846 conviction. *Smith v. United States*, — U.S. —, —, 113 S.Ct. 2050, 2053, 124 L.Ed.2d 138 (1993); *United States v. Wilson*, 938 F.2d 785, 791 (7th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 946, 117 L.Ed.2d 115 (1992). Use of a firearm "includes the possession of a firearm which in any manner facilitates the execution of a felony." *United States v. Ocampo*, 890 F.2d 1363, 1371 (7th Cir.1989) (citation omitted). Mere possession of a firearm is not enough; "there always must be 'some relation or connection between the underlying criminal act and the use or possession of the firearm.'" *United States v. Rosado*, 866 F.2d 967, 970 (7th Cir.) (quoting *United States v. Stewart*, 779 F.2d 538, 540 (9th Cir.1985), *cert. denied*, 484 U.S. 867, 108 S.Ct. 192, 98 L.Ed.2d 144 (1987)), *cert. denied*, 493 U.S. 837, 110 S.Ct. 117, 107 L.Ed.2d 79 (1989).

In challenging the evidence supporting his conviction, Gasca views his participation in the conspiracy as limited to the receipt and return of cocaine that occurred outside his apartment. Thus, according to Gasca, to use the revolver in that transaction, he would have had to run from the car to the bedroom of his upstairs apartment and retrieve the gun. As he did not carry or brandish the weapon during the events leading up to his arrest, he argues that a § 924(c) offense requires more than this "hypothetical access" to a firearm.

■ Contrary to Gasca's characterization of his involvement, his activity in the conspiracy was not limited to the exchange of cocaine at the car. Testimony indicated that Villagrana told Gasca to take two kilos, one at a time, to his apartment for cutting. Gasca was then seen leaving the car and entering his apartment. Fifteen minutes later, he returned to the car with enough wrapping to package one kilo of cocaine and four small bags of cocaine, presumably containing the now divided kilo. In the bedroom of his apartment, the arresting officers found the tools of Gasca's trade—a triple beam scale used to weigh the cocaine and plastic bags used to package smaller quantities. The slightly less than a gram of cocaine found scattered on the floor indicated the cutting had taken place in the bedroom. From this evidence, the jury could reasonably infer that, in furtherance of the conspiracy, he actually cut cocaine into distributable quantities in the bedroom of his apartment, at which time he had access to the revolver.

It is well established that firearms are used to protect illegal drug traffickers from the dangers presented by law enforcement and competing dealers, thereby increasing

the likelihood that the crime will be successfully completed. *See Ocampo*, 890 F.2d at 1371; *Wilson*, 938 F.2d at 791. The loaded .44 caliber revolver and its ammunition were found in the bedroom. It was in that bedroom where Gasca stored and cut cocaine and kept over $23,000 in cash. "Dealers who keep guns in 'strategic proximity' to their drugs or transactions 'use them in relation to' their drug trafficking for purposes of [§ 924(c)]." *Woods*, 995 F.2d at 718 (citing *United States v. Malin*, 908 F.2d 163, 168 (7th Cir.), *cert. denied*, 498 U.S. 991, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990)). Here, the jury could infer that Gasca kept his revolver at a location where he prepared drugs for distribution for the purpose of protecting himself, as well as the cocaine and cash stored in the bedroom.[1]

■ The fact Gasca did not brandish the gun is of no consequence. "Lack of an opportunity to brandish or shoot his weapon [does] not mean the [the defendant] did not 'use' the gun; . . . the fortuitous absence of a threatening occasion [to do so will not] rescue him from culpability under the statute." *United States v. Vasquez*, 909 F.2d 235, 239 (7th Cir.1990) (citing *Rosado*, 866 F.2d at 969–70), *cert. denied*, — U.S. ——, 111 S.Ct. 2826, 115 L.Ed.2d 996 (1991). Furthermore, "[t]he 'uses or carries' requirement of section § 924(c)(1) does not require that the weapon[] be found on or near the defendant." *Malin*, 908 F.2d at 168 (citing *Rosado*, 866 F.2d 967). Hence, that Gasca was not carrying the gun with him when he approached his friendly coconspirators does not alter our conclusion.

This is not a case in which the defendant possessed a gun "in relation to an obviously unrelated crime." *Ocampo*, 890 F.2d at 1371–72. Because the evidence supports an inference that the gun was available for Gasca's protection when he cut cocaine for Villagrana, the jury was entitled to conclude beyond a reasonable doubt that Gasca used the .44 caliber revolver in relation to his participation in the drug conspiracy.

### III. *Villagrana's § 924(c) Conviction*

■ Villagrana also challenges his § 924(c) conviction, but on different grounds. Under the doctrine set forth by the Supreme Court in *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), "one conspirator can be held liable for the crimes of another if committed in furtherance of the conspiracy." *United States v. Allen*, 930 F.2d 1270, 1275 (7th Cir.1991) (quotation omitted). Under this doctrine, one conspirator's possession of a firearm, in the furtherance of a drug trafficking conspiracy, may provide the basis for another conspirator's § 924(c) violation. *Id.* (citing *Ocampo*, 890 F.2d at 1372; *United States v. Diaz*, 864 F.2d 544, 548 (7th Cir.1988), *cert. denied*, 490 U.S. 1070, 109 S.Ct. 2075, 104 L.Ed.2d 639 (1989)). Here, Villagrana's § 924(c) conviction was based on his vicarious possession of the .22 caliber revolver found in the car the Fonseca brothers occupied at the time of their arrest.

On appeal, Villagrana argues that the district court did not clearly instruct the jury on the government's burden of proof with regard to *Pinkerton* liability. "We have held that a *Pinkerton* instruction is adequate if it focuses the jury[] on the conspirator's act, 'on whether it is a crime, on whether the coconspirator's guilt of this crime was proved beyond a reasonable doubt, and on whether it was committed in furtherance of the conspiracy in which the defendant participated.'" *United States v. McKenzie*, 922 F.2d 1323, 1330 (7th Cir.) (quoting *United States v. Manzella*, 791 F.2d 1263, 1268 (7th Cir.

---

1. In arguing insufficient evidence exists to support this conclusion, Gasca cites *United States v. Feliz–Cordero*, 859 F.2d 250, 254 (2nd Cir.1988), in which the Second Circuit held that the location of a firearm in a dresser drawer in the same room with drug paraphernalia was insufficient to show that the defendant intended to use the gun in connection with his drug trafficking crimes. We find this decision unpersuasive in light of our precedent. Moreover, the Second Circuit has repeatedly limited *Feliz–Cordero* to its precise facts. *See United States v. Hadfield*, 918 F.2d 987, 997 (1st Cir.1990) (citing *United States v. Torres*, 901 F.2d 205, 218–19 (2d Cir.), *cert. denied*, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990); *United States v. Alvarado*, 882 F.2d 645, 653 (2nd Cir.1989), *cert. denied*, 493 U.S. 1071, 110 S.Ct. 1114, 107 L.Ed.2d 1021 (1990); *United States v. Meggett*, 875 F.2d 24, 29 (2d Cir.), *cert. denied*, 493 U.S. 858, 110 S.Ct. 166, 107 L.Ed.2d 123 (1989)), *cert. denied*, — U.S. ——, 111 S.Ct. 2062, 114 L.Ed.2d 466 (1991).

1986)), *cert. denied,* —— U.S. ——, 112 S.Ct. 163, 116 L.Ed.2d 127 (1991). "The instruction should also 'advise jurors that the government [bears] the burden of proving ... all elements of the powerful *Pinkerton* doctrine ... beyond a reasonable doubt.'" *McKenzie,* 922 F.2d at 1330 (quoting *United States v. Elizondo, et al.,* 920 F.2d 1308, 1317 (7th Cir.1990)).

█ The written instruction received by the jury read as follows:

> A conspirator is responsible for offenses committed by his fellow conspirators if he was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of or as a natural consequence of the conspiracy.
>
> Therefore, if you find beyond a reasonable doubt (1) that the defendant whom you are considering is guilty of the conspiracy charged in Count One and (2) that while he was a member of the conspiracy one or more of his fellow conspirators was guilty of each of the elements of the offense charged in one of the other counts, as I have already covered those elements in earlier instructions, in the same way as though that other conspirator or conspirators was or were named as a defendant or defendants in that other count, and (3) that the offense charged in that count was committed in furtherance of or as a natural consequence of the conspiracy, then you should find the defendant whom you are considering guilty of that other count.

█ While conceding that this instruction otherwise properly states the requirements for *Pinkerton* liability, Villagrana argues that it failed to convey that the government had the burden of showing *beyond a reasonable doubt* that his coconspirators, the Fonseca brothers, committed the § 924(c) offense. Villagrana did not present this challenge to the district court, and consequently, we will reverse his conviction only upon a finding of plain error. Fed.R.Crim.P. 52(b). "Plain error exists when there has been such a miscarriage of justice that, but for the error, [the defendant] probably would have been acquitted." *United States v. Martinez,* 939 F.2d 412, 414 (7th Cir.1991).

We conclude that the above instruction informed the jury that, for *Pinkerton* liability to exist, it must find, beyond a reasonable doubt, that one of Villagrana's co-conspirators committed the § 924(c) offense. The instruction's "beyond a reasonable doubt" requirement applies to three elements, one of which was that one of Villagrana's coconspirators was guilty of another charged offense, the § 924(c) violation. We upheld a similar instruction in *Diaz,* although in that case the "beyond a reasonable doubt" requirement followed, as opposed to preceded, a recitation of the three substantive requirements. 864 F.2d at 549. While the government's burden may have been stated more clearly by including the "beyond a reasonable doubt" phrase with each specific element, the district court did not err by using that language in a prefatory phrase applying to all three elements.

█ Villagrana challenges the jury instructions on a second ground, however. Prior to giving the *Pinkerton* instruction, the district court gave the jury the following instruction:

> You should not speculate why defendant Baltazar Guevera, who is named in the indictment is not currently on trial before you. Remember your sole duty is to determine whether the government proved these two defendants, Mr. Villagrana, Mr. Gasca, guilty of the charges beyond a reasonable doubt.

Villagrana argues that this instruction and the *Pinkerton* instruction are mutually exclusive. That is, the jury's examination of whether a coconspirator committed a § 924(c) violation beyond a reasonable doubt would conflict with its "sole duty" to decide, beyond a reasonable doubt, the guilt or innocence of Villagrana and Gasca. According to Villagrana, these instructions confused the jury to the point that he was denied constitutional due process, and, as a result, we must reverse his conviction. *See Falconer v. Lane,* 905 F.2d 1129, 1137 (7th Cir.1990).

We read the instructions differently than Villagrana. The instruction to the jury that their sole responsibility was to decide whether the government proved, beyond a reasonable doubt, Villagrana's and Gasca's guilt

merely conveyed to the jury that only those two individuals were on trial. The second instruction stated the requirements of a theory under which the government could do so. As such, these instructions were entirely consistent with each other. The district court did not err.

## IV. *Villagrana's Sentence*

Villagrana appeals his sentence of thirty-five years imprisonment. In arguing that we should remand his case for resentencing, he contends that his sentencing was flawed for essentially two reasons: i) at his sentencing hearing, the district court failed to allow him to present evidence to rebut the presentence investigation report, and ii) a written copy of the district court's findings made at the sentencing hearing was not attached to the presentence report when it was forwarded to the Bureau of Prisons. As a result of these errors, Villagrana contends his sentence was imposed without due process.

■ With regard to Villagrana's first contention, due process requires that the defendant be sentenced on the basis of accurate information. *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 592, 30 L.Ed.2d 592 (1972); *United States v. Westbrook,* 986 F.2d 180, 182 (7th Cir.1993). In recognition of this right, "this court has focused upon the defendant's opportunity to rebut the government's evidence and the information in the presentence report." *United States v. Agyemang,* 876 F.2d 1264, 1270 (7th Cir.1989). Federal Rule of Criminal Procedure 32(a) provides procedural safeguards aimed at protecting this right by requiring the district court to determine "(1) whether the defendant has had an opportunity to read the [presentence investigation] report; (2) whether the defendant and defense counsel have discussed it; and (3) whether he or she wishes to challenge any facts in the report." *United States v. Eschweiler,* 782 F.2d 1385, 1388 (7th Cir.1986) (citing *United States v. Rone,* 743 F.2d 1169, 1174 (7th Cir.1984)). If, in response to the third inquiry, the defendant argues that the report contains factual inaccuracies, Rule 32(c)(3)(D) requires the court to make a finding as to allegations or indicate that no finding is necessary because the alleged inaccurate fact will not be relied on in sentencing.

In the case before us, the district court sentenced Villagrana and two other defendants involved in the conspiracy at the same hearing. Villagrana concedes that, as required by Rule 32(a), the district court properly verified that he had read his presentence report and discussed it with counsel. However, he argues that the district court failed to provide him an opportunity to present evidence to rebut the findings in the presentence report, the final requirement of Rule 32(a).

The transcript of the sentencing hearing belies Villagrana's assertion. The district court described the hearing process to the defendants as follows:

> Let me just explain to all three defendants that if there are any things that you think were mistaken in the reports it's important that either you or your lawyers should tell us what those are, because then we can make any corrections that are necessary in the reports. And that's important because these reports are now going to be part of your lives, they go along with you. But you should not feel that's the only thing that you are able to say when you get the chance to speak, because you can talk about any things in the report that you would like to mention, even though they are correct....

At the defendants' election, their counsel addressed the court first, followed by the defendants themselves. Villagrana's counsel objected to the several aspects of Villagrana's presentence report, including its conclusion that the conspiracy involved over 50 kilograms of cocaine, its recommendation of a four level enhancement for obstruction of justice, and its recommendation of a two level enhancement for a leadership role in the offense. He also argued to the court that Villagrana's conduct warranted a two level downward adjustment based on acceptance of responsibility.

In making these objections, counsel challenged both the factual accuracy of the presentence report, such as the amount of cocaine involved in the conspiracy, and its con-

clusions, such as whether the facts set forth in the report supported an upward adjustment based on Villagrana's role in the offense. The district court commented on each of these arguments as they were presented. Ultimately, counsel's contentions were rejected, and the district court accepted the recommendations contained in the presentence report.

At that point, Villagrana's counsel stated, "Judge, I don't have anything else that I haven't already argued." Villagrana was then allowed to speak, but offered no additional challenges to the presentence report. After the government's brief response, the court heard from Villagrana and his counsel again, at which time no new arguments of substance were made.

■ The district court fully complied with Rule 32(a) by conducting a thorough sentencing hearing at which Villagrana twice was allowed to raise challenges to the presentence report. At no point in their extensive dialogue with the court did Villagrana or his counsel indicate that they wished to present witnesses or other evidence related to their objections to the presentence report. In the absence of any effort by Villagrana or his counsel to submit evidence at the sentencing hearing, the court was entitled to consider and rule on the arguments that were raised and proceed to sentence Villagrana.

■ In response to Villagrana's substantive challenges to those findings, we have reviewed the record and find it supports the district court's determinations. Consequently, we hold that Villagrana received an opportunity to challenge the accuracy of the presentence report and his sentence was based on accurate information. He was not denied due process.

■ Turning to Villagrana's second alleged violation of due process, when the defendant alleges that the presentence report contains a factual inaccuracy, Rule 32(c)(3)(D) requires the district court to make findings related to each alleged inaccuracy or determine that no such finding is necessary because the disputed matter will not be relied upon in sentencing. This provi-

sion further requires that a written record of those findings be attached to the presentence report. Both Villagrana and the government agree that to the extent it resolved challenges to the factual accuracy of the presentence report, the district court failed to comply with the second requirement of Rule 32(c)(3)(D) by neglecting to have a transcript of those findings attached to the presentence report.

■ We reject Villagrana's argument that this oversight deprived him of due process. The first requirement of Rule 32(c)(3)(D), that the district court make a finding related to any alleged factual inaccuracy, directly protects a defendant's right to be sentenced based on accurate evidence. *United States v. Moran*, 845 F.2d 135, 138 (7th Cir.1988) (citing *Eschweiler*, 782 F.2d at 1387). The record reveals that while no written findings were made, the court resolved each contention raised by Villagrana, as required to satisfy the protection of due process contained in Rule 32(c)(3)(D). The attachment of those findings to the presentence report "provides a clear record of the disposition and resolution of controverted facts in the presentence report that aids appellate courts in their review of the sentencing hearings and administrative agencies, such as the Bureau of Prisons and Parole Commission, that use the report in their own decision-making process." *Id.* (citing *Eschweiler*, 782 F.2d at 1387).

■ In light of its purpose, a breach of this ministerial requirement is easily remedied by requesting the district court or its Probation Office to attach a transcript of the sentencing hearing to the presentence report. *Id.; Eschweiler*, 782 F.2d at 1390; *Andrews v. United States*, 817 F.2d 1277, 1280 n. 4 (7th Cir.), *cert. denied*, 484 U.S. 857, 108 S.Ct. 166, 98 L.Ed.2d 120 (1987). The United States Attorney has taken such action with respect to Villagrana's presentence report and the defect has been corrected. Thus, the district court's initial failure to ensure that Rule 32(c)(3)(D) was complied with was a ministerial defect which does not require resentencing.

Villagrana's other arguments are meritless and do not warrant discussion. Both defendants' convictions and sentences are AFFIRMED.