**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jose SANDOVAL–CURIEL,**
**Defendant–Appellant.**

**No. 93–3813.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 14, 1994.

Decided March 21, 1995.

---

**1.** Some of us may have noted this phenomenon even among lawyers, and (dare I say it?) judges.

Barry Rand Elden, Asst. U.S. Atty., Haywood McDuffie (argued), Office of U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Ronald J. Clark (argued), Chicago, IL, for defendant-appellant.

Before COFFEY, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

Jose Sandoval–Curiel and five others were charged with conspiracy to possess with the intent to distribute cocaine, distribution of cocaine, and use of a firearm during and in relation to the commission of a drug trafficking offense. 18 U.S.C. § 924(c); 21 U.S.C. §§ 841(a)(1), 846. Mr. Sandoval was convicted of all three counts. He was sentenced to concurrent terms of 97 months of imprisonment on each of the two drug counts and to a consecutive term of 60 months of imprisonment on the firearm count. On appeal, Mr. Sandoval challenges his firearm conviction.

He submits that the district court erred in giving a *Pinkerton* instruction to the jury and that the instruction failed adequately to advise the jury of the theory of vicarious liability under the *Pinkerton* doctrine. *See Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). We affirm.

I

BACKGROUND

In 1992, a government informant, Domingo Alvarez, contacted Salvador Negrete. Alvarez indicated that he was interested in purchasing 25 kilograms of cocaine. He also stated that he was looking for a source to supply large amounts of cocaine on a regular basis. Negrete agreed to find a source of cocaine for Alvarez and thereafter asked his neighbor, Mr. Sandoval, whether he knew of anyone who could supply cocaine to Alvarez. Mr. Sandoval stated that he would check with his "compadre," co-defendant Jose Lopez–Saucedo ("Saucedo"). Mr. Sandoval later informed Negrete that Saucedo would sell him four kilograms of cocaine for $104,000. Sandoval told Negrete that he would have to meet Saucedo at Saucedo's residence for further negotiations.

While Negrete and Mr. Sandoval were at Saucedo's apartment, Saucedo told Negrete that he needed to see the purchase money first and further requested that the deal take place in the apartment. Co-defendant Jose Lopez–Loera ("Loera") explained that, because of the duplicity of other purchasers, he and Saucedo had lost four kilograms of cocaine one week earlier, and on two other occasions, they had lost ten pounds of marijuana and another five to six kilograms of cocaine. Later, the defendants negotiated telephonically with Alvarez about the location for the contemplated transaction. Alvarez preferred the parking lot; the defendants insisted on the apartment. The parties eventually agreed that the sale would take place on the street in front of Saucedo's apartment. They were to exchange two vehicles; one

vehicle would contain the drugs; the other would contain the $104,000 payment.

Thereafter, Mr. Sandoval examined the $104,000 at a nearby parking lot and discussed with his co-defendants how to proceed with the transaction. Saucedo suggested that, because of their previous losses, they needed to take precautions for this transaction. He stated, "all these things have been happening to us. We got to think of something to do this time...." Tr. at 588. He suggested that perhaps they "should block the streets" by stationing a van at either end of the block to prevent the buyer from escaping with the drugs without paying. Mr. Sandoval and Loera agreed to the suggestion. Loera circled the block and then parked his van, with the engine running, at a corner on one end of the block. Mr. Sandoval moved his van and parked it at the other end of the block. Meanwhile, Saucedo placed the cocaine in the vehicle driven by Negrete.[1] Alvarez and another undercover agent arrived shortly thereafter in a vehicle that was to be exchanged with the vehicle containing the cocaine. As soon as the arrest signal was given, Officers Guiffre and Meyer pulled their car behind Loera's van and arrested him. They recovered from Loera's pocket a Raven .25 caliber semi-automatic pistol fully loaded with a live round of ammunition in its chamber.

According to Officer Guiffre, Loera stated, after being advised of his *Miranda* rights, that he had the firearm because "he had heard that people were sometimes robbed during deals and that there was a lot of money involved in this deal." Tr. at 1159. Loera also stated, according to Officer Guiffre, that he did not know how to use the pistol and that the pistol had been given to him by someone else. Prior to trial, Loera and Saucedo violated their bail conditions and became fugitives. Mr. Sandoval was tried with two other co-defendants.

II

DISCUSSION

Mr. Sandoval challenges his firearm conviction under 18 U.S.C. § 924(c). He con-

---

1. Negrete had obtained the use of this vehicle from the confidential informant who, in turn, had obtained the vehicle from the DEA. Neg-

rete, of course, did not know that he was driving a government vehicle.

tends that he should not be held vicariously liable for Loera's possession of the pistol. In *Pinkerton v. United States,* the Supreme Court of the United States held that in a conspiracy " 'an overt act of one [conspirator] may be the act of all without any new agreement specifically directed to that act.' " 328 U.S. 640, 646–47, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946) (quoting *United States v. Kissel,* 218 U.S. 601, 608, 31 S.Ct. 124, 126, 54 L.Ed. 1168 (1910)). A defendant is responsible for a substantive offense committed by his coconspirators unless the criminal act "was not in fact done in furtherance of the conspiracy, did not fall within the scope of the unlawful project, or was merely a part of the ramifications of the plan which could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement." *Id.* at 647–48, 66 S.Ct. at 1184. This rule applies even if the defendant does not participate in the substantive offense or have any knowledge of it. *Id.* at 647, 66 S.Ct. at 1184. Under this doctrine, we have held that firearm possession by one conspirator, pursuant to 18 U.S.C. § 924(c), may be imputed to other members of the drug conspiracy, unless the possession was not a natural or reasonably foreseeable consequence of the conspiracy. *United States v. Edwards,* 36 F.3d 639, 644 (7th Cir.1994); *United States v. Williams,* 31 F.3d 522, 526 (7th Cir.1994); *United States v. Carson,* 9 F.3d 576, 591 (7th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 135, 130 L.Ed.2d 77 (1994); *United States v. Gutierrez,* 978 F.2d 1463, 1467 (7th Cir.1992); *United States v. Diaz,* 864 F.2d 544, 549 (7th Cir.1988), *cert. denied,* 490 U.S. 1070, 109 S.Ct. 2075, 104 L.Ed.2d 639 (1989).

■ Mr. Sandoval was convicted of the underlying drug conspiracy. He does not challenge the sufficiency of the evidence demonstrating his membership in the conspiracy. He questions whether the government proved beyond a reasonable doubt that Mr. Sandoval's coconspirator Loera used or carried a firearm in furtherance of the conspiracy, and whether carrying the weapon was a reasonably foreseeable or natural consequence of the conspiracy. In reviewing for sufficiency of the evidence, this court considers the evidence and accompanying inferences in the light most favorable to the government. We shall not disturb the jury's finding unless the record is devoid of any evidence from which a jury could find guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *United States v. Wilson,* 31 F.3d 510, 513–14 (7th Cir.1994).

■ Mr. Sandoval submits that, other than a single hearsay statement, there is no evidence establishing that Loera's possession of the gun was a part of the conspiratorial plan. The hearsay statement to which Mr. Sandoval refers is Officer Guiffre's testimony that Loera admitted upon his arrest that the gun was to protect the group from being robbed. Mr. Sandoval did not object to the admission of the statement at trial, and thus any argument that the hearsay evidence was untrustworthy is waived and reviewable only for plain error.

■ Because Loera's statement was made after he had been arrested and thus not "during the course and in furtherance of the conspiracy," *see* Fed.R.Evid. 801(d)(2)(E), it is hearsay evidence. *See United States v. Curry,* 977 F.2d 1042, 1057 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1357, 122 L.Ed.2d 737 (1993). The statement, however, was admissible as a statement against penal interest under Federal Rule of Evidence 804(b)(3), which allows for an exception to the hearsay rule where the declarant is unavailable as a witness, and corroborating circumstances exist indicating the trustworthiness of the statement. *See United States v. Hamilton,* 19 F.3d 350, 357 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 480, 130 L.Ed.2d 394 (1994); *United States v. Gio,* 7 F.3d 1279, 1288 (7th Cir. 1993). The declarant Loera was unavailable as a witness because he was a fugitive. The statement, however, was sufficiently trustworthy: Loera made the statement after being advised of his *Miranda* rights, and nothing indicates that the statement was made in an attempt to curry favor with law enforcement officers. *See United States v. Garcia,* 986 F.2d 1135, 1140 (7th Cir.1993).

 Even without the hearsay statement, moreover, there is ample evidence to prove that Loera's possession of the gun was a natural or reasonably foreseeable consequence of the conspiracy. This court has noted that it is reasonable for a jury to conclude that the presence of firearms in transactions involving a sizeable amount of money or drugs is reasonably foreseeable. *United States v. Allen,* 930 F.2d 1270, 1275 (7th Cir.1991).[2] The drug industry is by nature dangerous and violent, and the jurors are permitted to use their common sense in concluding that, in a large-scale transaction, the presence of firearms is foreseeable.[3]

On the record in this case, the jury was entitled to infer, based on the sizable amount of money and drugs involved, as well as the group's concern for security, that it was reasonably foreseeable that firearms would be carried to protect the drug transaction. The transaction at issue involved $104,000. The group had been robbed of four kilograms of cocaine one week earlier and had lost another ten pounds of marijuana and five to six kilograms of cocaine on two other occasions. The conspirators had agreed that, because of their previous losses, they would take the precaution of blocking the street with their vans to prevent the purchaser from escaping with the drugs before paying. With the explicit purpose of protecting the group from robbery, Loera surveyed the scene of the transaction and parked his van with the van's engine running. Because of the precautions taken during the $104,000 sale, the jury could infer that a weapon would be carried to guard against any danger that might arise during the course of the transaction. *See United States v. Alvarez,* 755 F.2d 830, 849 (11th Cir.1985) (evidence at trial indicating that at least two of the conspirators were extremely nervous about the "possibility of a rip-off or a drug bust" during the $49,000 drug sale lends support to the reasonableness of the jury's verdict). Indeed, the weapon was fully loaded when it was found in Loera's pocket. Although Loera did not display or brandish the gun during the transaction, the fact that the weapon was in strategic proximity to the drug transaction and was "available for protection during the course of the narcotics offense" is sufficient to sustain a § 924(c) conviction.[4] In light of all the evidence, the jury could conclude that Loera's possession of the gun was in furtherance of and a natural or reasonably foreseeable consequence of the conspiracy. It follows that Mr. Sandoval can be held vicariously liable for possession of the firearm under the *Pinkerton* doctrine.

 Mr. Sandoval also submits that the application of the *Pinkerton* doctrine was unfair because, although the government brought this charge against him, it dropped, pursuant to a plea agreement, the same charge against his coconspirator Negrete. To the extent that Mr. Sandoval is raising an equal protection claim of selective prosecution, he cannot succeed. As a threshold mat-

---

2. We note that one case in another circuit appears to assume that we follow the practice of indulging in a presumption that weapons are always present in large-scale transactions. *See United States v. Gonzalez,* 918 F.2d 1129, 1136 (3d Cir.1990). We do not believe that such a construction of our caselaw is accurate. The application of the *Pinkerton* doctrine to a particular set of facts is ultimately a jury question. *See* Federal Criminal Jury Instructions of the Seventh Circuit, vol. III, p. 6 (1986); *United States v. Villagrana,* 5 F.3d 1048, 1052–53 (7th Cir.1993). Although the amount of money and drugs involved are relevant and probative evidence on the issue of the foreseeability of weapons, the burden of proving foreseeability under the circumstances of each individual case remains squarely on the government.

3. *See Edwards,* 36 F.3d at 644; *Williams,* 31 F.3d at 526; *see also Diaz,* 864 F.2d at 549 ("When

an individual conspires to take part in a street transaction involving a kilogram of cocaine worth $39,000, it certainly is quite reasonable to assume that a weapon of some kind would be carried."); *Gutierrez,* 978 F.2d at 1468 (holding that where "defendants agreed to sell two kilograms of cocaine for $60,000 ... it was reasonably foreseeable that a gun would be carried in relation to the illegal transaction.").

4. *See Edwards,* 36 F.3d at 644; *Villagrana,* 5 F.3d at 1051–52; *United States v. Woods,* 995 F.2d 713, 718 (7th Cir.1993); *see also United States v. Rosado,* 866 F.2d 967, 969 (7th Cir.) (concluding that the defendant used or carried his firearm in violation of § 924(c) even though the revolver was in the pocket of his jacket placed in a car parked thirty feet away from the drug transaction), *cert. denied,* 493 U.S. 837, 110 S.Ct. 117, 107 L.Ed.2d 79 (1989).

ter, Mr. Sandoval failed to raise the issue before trial. *See United States v. Jarrett,* 705 F.2d 198, 204 (7th Cir.1983), *cert. denied,* 465 U.S. 1004, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984). In any event, Mr. Sandoval does not complain, nor does the record support, that the government's decision to drop the firearm charge against Negrete and not against Sandoval was based on impermissible grounds. It is well established that the government retains broad discretion in determining what persons to prosecute and what charges to bring against those persons. *Wayte v. United States,* 470 U.S. 598, 607–08, 105 S.Ct. 1524, 1530–31, 84 L.Ed.2d 547 (1985); *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668–69, 54 L.Ed.2d 604 (1978); *United States v. Smith,* 953 F.2d 1060, 1064 (7th Cir.1992). The record will not support a determination that the decision of the government was based upon impermissible grounds such as race, religion or the exercise of protected statutory and constitutional rights. *Wayte,* 470 U.S. at 608, 105 S.Ct. at 1531.

■ Mr. Sandoval next argues that the district court's *Pinkerton* instruction was inadequate. His submission in this regard is, to put it charitably, terse. His argument, fairly read, is that the district court did not adequately delineate the elements of the *Pinkerton* instruction or adequately advise the jury that each element must be established beyond a reasonable doubt. Again, as a threshold matter, we note that Mr. Sandoval did not delineate clearly this argument in his presentation to the district court.[5] *See* Fed.R.Crim.P. 30; *United States v. Starnes,* 14 F.3d 1207, 1213 (7th Cir.) (noting that, under Federal Rule of Criminal Procedure 30, a party may not challenge an error in a jury instruction unless the party timely objects to the instruction, and states "distinctly the matter to which that party objects and the grounds of the objection"), *cert. denied,* —— U.S. ——, 114 S.Ct. 2717, 129 L.Ed.2d 842 (1994). The argument is therefore waived absent plain error. Fed. R.Crim.P. 52(b); *see United States v. Jones,*

21 F.3d 165, 172–73 (7th Cir.1994); *Villagrana,* 5 F.3d at 1053; *United States v. Martinez,* 939 F.2d 412, 414 (7th Cir.1991); *United States v. O'Malley,* 796 F.2d 891, 894 (7th Cir.1986). The district court gave the following instruction:

A conspirator is responsible for offenses committed by his fellow conspirators if he was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of or as a natural consequence of the conspiracy. Therefore, if you find any defendant or defendants guilty of the conspiracy charged in Count One of the indictment and if you find beyond a reasonable doubt that while that defendant or those defendants were members of the conspiracy, their fellow conspirator Jose Lopez Loera committed the offense in Count Three [the firearm count] in furtherance of or as a natural consequence of that conspiracy, then you should find that defendant or those defendants guilty of Count Three.

Tr. at 1526. The district court next instructed the jury that, to sustain the § 924(c) firearm charge, the government must prove beyond a reasonable doubt the following two propositions: (1) that the defendant was guilty of either the conspiracy count or the distribution count or both; and (2) that the defendant used a firearm during and in relation to either or both of those counts. The district court also instructed, "if you find from your consideration of all the evidence that both of these propositions have been proved beyond a reasonable doubt, then you should find the defendant guilty of Count Three of the indictment." Tr. at 1527.

■ For a *Pinkerton* instruction to be adequate, it must focus the jury "on the coconspirator's act, on whether it is a crime, on whether the coconspirator's guilt of this crime was proved beyond a reasonable doubt, and on whether it was committed in furtherance of the conspiracy in which the defendant participated." *United States v. Manzella,* 791 F.2d 1263, 1267 (7th Cir.1986); *see also*

---

5. During the instruction conference, Mr. Sandoval's counsel objected only generally to the giving of any *Pinkerton* instruction, arguing that the government was using it to bootstrap the gun charge for everyone and that there was insufficient evidence to show that Loera's possession of the firearm was a natural consequence of the conspiracy. Tr. at 1382.

*Villagrana,* 5 F.3d at 1052; *United States v. McKenzie,* 922 F.2d 1323, 1330 (7th Cir.), *cert. denied,* 502 U.S. 854, 112 S.Ct. 163, 116 L.Ed.2d 127 (1991). The instruction must also advise the jury that the government bears the burden of proving all elements of the doctrine beyond a reasonable doubt. *Villagrana,* 5 F.3d at 1052; *McKenzie,* 922 F.2d at 1330. The district court's instruction in this case met the above requirements. It effectively advised the members of the jury that they could hold Mr. Sandoval responsible for the acts of his coconspirator Loera if they found Mr. Sandoval guilty of conspiracy and if they found beyond a reasonable doubt (1) that Loera committed the firearm offense, (2) that the offense was committed in furtherance of or as a natural consequence of that conspiracy, and (3) that Mr. Sandoval was a member of the conspiracy when Loera committed the firearm offense. The phrase "beyond a reasonable doubt" was not repeated before each of the three elements. We have held, however, that this omission is not error when the district court used that language in a prefatory phrase applying to all three elements. *Villagrana,* 5 F.3d at 1053; *cf. Diaz,* 864 F.2d at 549 (holding *Pinkerton* instruction adequate where the "beyond reasonable doubt" phrase followed the three elements of the doctrine). This court has upheld nearly identical or substantially similar *Pinkerton* instructions.[6] There is no plain error.

## Conclusion

Accordingly, we affirm Mr. Sandoval's conviction under 18 U.S.C. § 924(c).

AFFIRMED.

---

[6]. *See, e.g., Edwards,* 36 F.3d at 646 n. 1; *United States v. Troop,* 890 F.2d 1393, 1399–40 (7th Cir.1989); *United States v. Gironda,* 758 F.2d 1201, 1211 (7th Cir.), *cert. denied,* 474 U.S. 1004, 106 S.Ct. 523, 88 L.Ed.2d 456 (1985); *see also United States v. Goines,* 988 F.2d 750, 774 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993); *cf. United States v. McClain,* 934 F.2d 822, 825–29 (7th Cir.1991)

(holding similar *Pinkerton* instruction inadequate to support conviction on four of five counts of attempted extortion where various aspects of the liability were unusual and complex, the instruction was not linked to the crime of attempted extortion or its elements and the indictment was complex; acknowledging that when application of coconspirator liability is straightforward, a simple *Pinkerton* instruction may suffice).