**UNITED STATES of America,**
**Plaintiff,**

v.

**Tiburcio VALENZUELA, Defendant.**

**No. 98 CR 753.**

United States District Court,
N.D. Illinois,
Eastern Division.

May 17, 1999.

---

Jonathan D. King, Debra Riggs Bonamici, United States Attorney's Office, Chicago, IL, for U.S.

Susan Christen Casey, Federal Defender Program, Gerardo Solon Gutierrez, Chicago, IL, for Tibercio Valenzuela, defendant.

### MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

A grand jury indicted Tiburcio Valenzuela and his co-defendant, Hugo Corral, for possession with the intent to distribute approximately six kilograms of cocaine. Immediately after Valenzuela and Corral were arrested, Corral gave a statement to Drug Enforcement Agent Steve McGuigan and, after posting bond, absconded. Valenzuela asks this Court to preclude the government's use of Corral's statement at trial, arguing that the statement is inadmissible hearsay. The government maintains that the statement is admissible under Federal Rule of Evidence 804(b)(3) as a statement against interest. We conclude that Corral's statement is neither truly against his own interest nor trustworthy as required by Rule 804(b)(3) and, therefore, exclude any reference to the substance of Corral's statement at trial.

### I. Facts

On October 16, 1998, DEA agents arrested Valenzuela and Corral after discov-

ering (pursuant to a consent search) six kilograms of cocaine in Valenzuela's van. Corral waived his *Miranda* rights and gave a statement to Agent McGuigan at the scene. During Corral's statement, McGuigan took handwritten notes, which Corral initialed. (Resp. Br. at Ex. B.) Corral told McGuigan that he was a drug courier for Valenzuela; he described six occasions, including the evening of his arrest, during which he picked-up and/or delivered either marijuana or cocaine at the direction of Valenzuela. McGuigan later prepared a type written report of Corral's statement. (Resp. Br. at Ex. C.)

Corral and Valenzuela appeared before Magistrate Judge Rosemond on October 17, 1998. Corral posted a $4,500.00 bond, but Valenzuela was denied bond. Apparently Corral attended the christening of his child, appeared at a preliminary examination hearing on October 21, and submitted to an additional interview with McGuigan. At the second interview, Corral primarily confirmed the information he gave to McGuigan during his first statement. (Resp.Br.Ex. D.) Corral disappeared sometime before November 17, the day Judge Rosemond issued a bench warrant for his arrest. Corral remains a fugitive.

## II. The Issue

The government wants Agent McGuigan to testify at Valenzuela's trial about Corral's statements regarding his and Valenzuela's drug trafficking activities; specifically, it wants McGuigan to tell the jury about the six occasions that Valenzuela allegedly instructed Corral to pick-up or deliver drugs. The government presents no argument about those portions of Corral's statement that do not pertain to actual trafficking (e.g., how Corral met Valenzuela, that Valenzuela bought him a cell phone), even though Valenzuela's motion also challenges the admissibility of these non-trafficking bits.

Valenzuela wants to keep Corral's statement out of evidence. He maintains that the entire statement is hearsay not subject to the "statement against interest" exception found in Rule 804(b)(3). Primarily, he argues that the statement was really a product of Corral's attempts to "curry favor" with the authorities so that he could obtain bail and attend his child's christening.

## III. Analysis

■ Rule 804(b)(3) provides that an out-of-court statement which, at the time of its making, "tended to subject the declarant to civil or criminal liability ... [such] that a reasonable person in the declarant's position would not have made it unless believing it to be true" is admissible at trial. The underlying reason for this hearsay exception is "the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." *Williamson v. United States*, 512 U.S. 594, 598, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). The government bears the burden of establishing the admissibility of Corral's out-of-court statement. *American Automotive Accessories, Inc. v. Fishman*, 175 F.3d 534, 539–40 (7th Cir.1999) ("The proponent of the out-of-court statement bears the burden of showing that the statement qualifies under Rule 804(b)(3)").

■ Under Rule 804(b)(3) the admissibility of a hearsay statement rests on three elements: the declarant is unavailable; the statement is against the declarant's penal interest; and the statement is trustworthy. *See, e.g., United States v. Butler*, 71 F.3d 243, 252 (7th Cir.1995). We waste no time on the first prong because Corral is clearly unavailable: he is a fugitive. But there appears to be some confusion among the courts over which of the two remaining Rule 804(b)(3) elements is implicated by Valenzuela's "curry favor" argument.

The Seventh Circuit treats "currying favor" as a factor to consider in determining the trustworthiness of an out-of-court

statement. For example, in *United States v. Nagib,* 56 F.3d 798 (7th Cir.1995), the court identified three factors going to the trustworthiness of a statement:

> First, a district court must look to the relationship between the confessing party and the [inculpated] party. Second, the court must consider whether the confessor made a voluntary statement after being advised of his Miranda rights. Third, the court must determine whether there is any evidence that the statement was made in order to curry favor with the authorities.

*Id.* at 805; *see also United States v. Sandoval-Curiel,* 50 F.3d 1389, 1392 (7th Cir. 1995) ("The statement, however, was sufficiently trustworthy: ... nothing indicates that the statement was made in an attempt to curry favor with law enforcement officers."); *United States v. Garcia,* 986 F.2d 1135, 1140 (7th Cir.1993) ("[W]e identified two additional factors which supported the trustworthiness of the testimony: ... (2) there was no evidence that his statement was made in order to curry favor with the authorities.").

But the Supreme Court has analyzed a defendant's "currying favor" argument under the rubric of whether the declarant's out-of-court statement was truly against the declarant's interest. *Williamson,* 512 U.S. at 603, 114 S.Ct. 2431 ("Even the confessions of arrested accomplices may be admissible if they are truly self-inculpatory, rather than merely attempts to shift blame or curry favor."). In fact, the *Williamson* Court declined to decide whether Rule 804(b)(3) requires an inculpatory statement to be trustworthy. *Id.* at 605, 114 S.Ct. 2431 ("We also need not decide whether ... the second sentence of Rule 804(b)(3)—'A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement'—also requires that statements inculpating the accused be supported by corroborating circum-

stances."); *but see American Automotive Accessories,* at 540 ("We believe it best to continue to utilize a unitary standard for applying Rule 804(b)(3) to statements offered both to exculpate and to inculpate a third party.").

In any event, the caselaw clearly establishes that an out-of-court statement about a defendant's participation in a crime made by the declarant for the purpose of shifting blame or currying favor with authorities is, whether evaluated under the inculpatory prong or the trustworthiness prong of Rule 804(b)(3), inadmissible hearsay. We turn now to the special evidentiary issues presented by a co-defendant's hearsay confession that was made to law enforcement authorities and inculpates the defendant.

"The arrest statements of a co-defendant have traditionally been viewed with special suspicion. Due to his strong motivation to implicate the defendant and to exonerate himself, a co-defendant's statements about what the defendant said or did are less credible that ordinary hearsay evidence." *Williamson,* 512 U.S. at 601, 114 S.Ct. 2431 (quotation omitted). In fact, the Supreme Court has "consistently recognized [that] a co-defendant's confession is presumptively unreliable as to the passages detailing the defendant's conduct or culpability." *Lee v. Illinois,* 476 U.S. 530, 545, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986). The reason underlying the presumption is that "those passages may well be the product of the co-defendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another." *Id.*

■■■ The declarant's motivation when making the confession is key to determining its admissibility at the trial of a third party:

> "Whether a statement is in fact against interest must be determined from the circumstances of each case. Thus a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to

curry favor with the authorities and hence fail to qualify as against interest." Fed.R.Evid. 804(b)(3) advisory committee notes; *see also Williamson*, 512 U.S. at 603, 114 S.Ct. 2431 ("[W]hether a statement is self-inculpatory or not can only be determined by viewing it in context."). Similarly, a confession is inadmissible when the declarant implicated the defendant to "decrease his [own] practical exposure to criminal liability." *Williamson*, 512 U.S. at 604, 114 S.Ct. 2431. As Professor Weinstein explains, "If the statement or any part of it serves the declarant's interest, it is not admissible as a statement against interest." 5 Joseph E. McLaughlin, et al., *Weinstein's Federal Evidence* § 804.06[4][d][iii], at 804–55 (2d ed.1999). The presumption against admitting a co-defendant's confession is also informed by a rather common sense notion: "[O]nce partners in a crime recognize that the 'jig is up,' they tend to lose any identity of interest and immediately become antagonists, rather than accomplices." *Lee*, 476 U.S. at 544–54, 106 S.Ct. 2056.

---

**1.** In general, the Seventh Circuit's criminal cases involve the admission of out-of-court statements exculpating the defendant. *See, e.g., Butler*, 71 F.3d at 252 (co-defendant Dixon told a private investigator that he, and not defendant Butler, possessed the gun); *Nagib*, 56 F.3d at 801 (co-defendant Dumont made statement tending to show that he, and not Nagib, was responsible for shipping drugs); *Carson v. Peters*, 42 F.3d 384, 385 (7th Cir. 1994) (two co-defendants confessed to a murder without implicating defendant Carson); *Garcia*, 986 F.2d at 1139 (co-defendant Torres told investigators that defendant Garcia knew nothing about the drugs in the truck); *United States v. Moore*, 936 F.2d 1508, 1516 (7th Cir.1991) (co-defendant Miles told police that he had coerced defendant Moore into participating in armed robbery). Even in those Seventh Circuit criminal cases that involve statements inculpating the defendant, the statement was not given to law enforcement authorities. *See, e.g., United States v. Hamilton*, 19 F.3d 350, 352 (7th Cir.1994) (out-of-court statement made by defendant Hamilton to his cellmate); *United States v. Curry*, 977 F.2d 1042, 1055 (7th Cir.1992) (statement by co-defendant to a government informant); *United States v. York*, 933 F.2d 1343, 1360–61 (7th Cir.1991) (out-of-court

There are no Seventh Circuit criminal cases analyzing the admissibility of a third party's confession to police that implicates a defendant in criminal activity.[1] However, in *American Automotive*, at 541, a civil case, the Seventh Circuit applied *Williamson* to affirm a district court's decision excluding an out-of-court confession because it was not truly against the interest of the declarant. In that case, Favia (the declarant) embezzled money from American Automotive by writing checks to fictitious creditors and then cashing them at Fishman's currency exchange. Favia told officials from American that Fishman knew the checks were phoney. American and Favia settled their claims, and American pursued litigation against Fishman. Favia refused to testify and American wanted to admit his statement via testimony of the American officials. The Seventh Circuit agreed with the district court that Favia's statement was inadmissible hearsay because

Favia made the statements only after he had been confronted with Emalfarb's

statement made by a co-defendant to a neighbor).

*Williamson*, 512 U.S. at 597, 114 S.Ct. 2431, and *Sandoval–Curiel*, 50 F.3d at 1391, are the only two recent binding cases that involve out-of-court statements to the police that inculpate a defendant. In *Williamson*, the Supreme Court remanded for a factual determination of whether the co-defendant's statement, which inculpated the defendant, to police after his arrest was truly against the co-defendant's interest. We are unable to discover what the district court did on remand.

In *Sandoval–Curiel*, the Seventh Circuit held that the hearsay objection was waived and, thus, reviewed only for plain error. 50 F.3d at 1392. The court then bruskly concluded that there was no plain error because the statement "was sufficiently trustworthy: Loera made the statement after being advised of his *Miranda* rights, and nothing indicates that the statement was made in an attempt to curry favor with law enforcement officers." *Id.* Of course, our task here is to apply *Williamson's* legal principles to the facts of this case. Unfortunately, because of its procedural posture, *Sandoval–Curiel* is not very informative regarding the facts probative of the statement's admissibility.

discovery of his misconduct. Favia made the statements to adversaries, to whom he was liable for over $450,000, which supports the inference that Favia may have been attempting to secure a lesser punishment for himself through cooperation. Additionally, after Favia's statements, the parties entered into an agreement under which [American] agreed to accept payment of only $196,-528.04 in satisfaction of Favia's acknowledged $459,309.03 debt.

at 541. In other words, the district court correctly excluded the statement after finding that Favia implicated Fishman for the purpose of reducing his own "punishment"—decreasing his practical liability to American by More than $250,000.

■ After carefully reviewing the facts of this case in light of these standards and guidelines, we conclude that Corral's statement was neither against his own interest nor trustworthy, and therefore grant Valenzuela's motion to exclude the statement. The following facts inform our decision. Corral made his statement immediately after his arrest and without the benefit of counsel. Although he voluntarily waived his *Miranda* rights, he was caught red-handed possessing and transporting six kilograms of cocaine and surely knew he faced a substantial prison sentence. A Supreme Court statement fits this case to a T:

> [a] reasonable person in [Corral's] position might ... think that implicating someone else would decrease his practical exposure to criminal liability .... Small fish in a big conspiracy often get shorter sentences than people who are running the whole show, especially if the

small fish are willing to help authorities catch the big ones.

*Williamson,* 512 U.S. at 604 (citations omitted). This statement takes on added significance when the Federal Sentencing Guidelines are considered.[2] Like Favia, Corral made his statement to adversaries for the purpose of securing a lesser punishment through his cooperation.

Additionally, Valenzuela informs us that Corral is a Mexican national with no ties to this country, and that he frequently returns to Mexico. In other words, Corral was an obvious flight risk. Under the totality of circumstances, it was exceedingly unlikely that Corral, absent some display of cooperation, could obtain bond to attend his daughter's baptism—not to mention bond in the rather paltry amount of $4,500. Despite the statutory preference against bond, Corral's obvious risk for flight, and the potential for a long prison sentence, Corral received bond.

Furthermore, the substance of Corral's statement minimizes his participation in the drug trafficking by pointing the finger at Valenzuela, naming him as the ringleader of the operation. And the statement was not sworn; Corral was therefore not subject to (nor warned of) additional penalties for perjury. *Compare Moore,* 936 F.2d at 1517 (relying on fact that the declarant's post-arrest statement was unsworn, among other things, to exclude the statement).

We find that Corral gave his statement for the purpose of obtaining bond, and perhaps a reduced sentence, by shifting the lion's share of the blame to Valenzuela and by currying favor with the authorities through his cooperation. For these rea-

---

**2.** The Court does not have all the relevant information to calculate the precise sentencing guideline range Corral's conduct would warrant, but we note that, even assuming Corral is a first-time offender, six kilograms of cocaine would result in level 32 with a sentencing range of 121—151 months. § 2D1.1. And, even if he got a two-level reduction for acceptance of responsibility, § 3E1.1, he would still have a range of 97–

121 months. This, of course, is not counting all of the relevant conduct that he admitted in his statement. Thus, even the most conservative estimate based on Corral's statement of his conduct results in a lengthy sentence: between eight and ten years in prison. Corral's cooperation, which could in turn trigger a § 5K1.1 departure motion by the government, creates significant motivation for Corral to implicate Valenzuela.

sons, the Court's evaluation of all the relevant circumstances leads it to conclude that Corral's statement was neither truly against his own interest nor trustworthy.

The government presents two primary contentions supporting the admissibility of Corral's statement. First, it argues that Corral's statement was voluntary, and therefore trustworthy. That Corral gave his statement in the relative comfort of Agent McGuigan's car after explicitly waiving his right to counsel does not per se establish its admissibility. In *Williamson*, the declarant also received and waived his *Miranda* rights, yet the case was remanded for a factual determination. Here, the simple fact of voluntariness does nothing to strengthen our faith in Corral's statement; the circumstances surrounding Corral's confession overpower any benefit the government can derive from the voluntariness of the confession. *Compare Lee*, 476 U.S. at 544, 106 S.Ct. 2056 ("Although ... the confession was found to be voluntary for Fifth Amendment purposes, such a finding does not bear on the question of whether the confession was also free from any desire, motive, or impulse [the declarant] may have had either to mitigate the appearance of his own culpability ... or to overstate [the defendant's] involvement.").

■ Second, the government argues that other evidence corroborates the substance of Corral's statement.[3] But the truth of Corral's statement is not at issue here: "Rule 804(b)(3) does not require that the statements themselves be clearly corroborated. Rather, the rule requires 'corroborating circumstances [that] clearly indicate the trustworthiness of the statements.'" *Garcia*, 986 F.2d at 1141 (quoting Rule 804(b)(3)); *see also United States v. Price*, 134 F.3d 340, 347 (6th Cir.1998)

("Rule 804(b)(3) does not require that the information within the statement be clearly corroborated; it requires only that there be corroborating circumstances [that] clearly indicate the trustworthiness of the statement, itself."). Here, as the discussion above indicates, the circumstances surrounding Corral's statement clearly indicate the opposite; that his statement was not trustworthy and not truly against his interest because he made it for the purpose of obtaining bond and reducing his punishment.

In any event, the government's evidence purportedly supporting the substance of Corral's statement is insufficiently probative of its fundamental trustworthiness. The main import of Corral's statement is that Valenzuela was the ringleader of their drug trafficking operation; that Valenzuela directed each of Corral's drug-connected activities. None of the government's supposed corroborating evidence confirms Valenzuela's leadership role. For example, Gonzalez's statement about Valenzuela saying he would be picking up cocaine later in the day is fully consistent with the possibility that·Valenzuela was the courier and Corral the leader. Similarly, the surveillance agents merely confirmed the movements of the two men; they have no knowledge of the hierarchy between them. Thus, even after evaluating the government's evidence purportedly corroborating the substance of Corral's hearsay confession, we conclude that the government has not met its burden of establishing the trustworthiness of Corral's statement.

The concern underlying the hearsay rule is that out-of-court-statements are not subject to the procedural safeguards of trial; for example, "the oath, the witness' awareness of the gravity of the proceedings, the

---

**3.** Specifically, the government points to observations by surveillance officers on the day Corral and Valenzuela were arrested confirming Corral's description of their movements; the six kilograms of cocaine found in the van, also as described by Corral; Corral's fingerprints on the bag of cocaine, although Valenzuela's were not; telephone records showing that Corral and Valenzuela frequently talked on the phone; marijuana residue found at a building owned by Valenzuela's wife; and testimony by Juan Gonzalez that earlier on October 16 Valenzuela had told Gonzalez that he would be picking up cocaine later in the day.

jury's ability to observe the witness' demeanor, and, most importantly, the right of the opponent to cross-examine." *Williamson,* 512 U.S. at 598, 114 S.Ct. 2431. The exceptions to the hearsay rule simply "recognize that some kinds of out-of-court statements are less subject to these hearsay dangers." *Id.* The safeguard in Rule 804(b)(3) is that "a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Rule 804(b)(3). Here, we have identified several reasons, other than truth, motivating Corral's statement to the authorities.

## IV. Conclusion

The government has not met its burden of establishing that Corral's statement is admissible hearsay under Rule 804(b)(3). Instead, we find that Corral confessed to Agent McGuigan for selfish purposes: namely, he hoped to increase his chances of obtaining bond, shift the lion's share of blame from himself to Valenzuela, and reduce likelihood of a long prison sentence for himself by appearing to cooperate with McGuigan's investigation. Under these circumstances, Corral's statement does not satisfy the test under Rule 804(b)(3) as enunciated by the Supreme Court in *Williamson.* Therefore, the Court concludes that Corral's statement is inadmissible hearsay. For these reasons, we grant Valenzuela's motion to exclude Corral's statement from evidence at his trial.[4]

### *ADDENDUM*

On June 10, 1999, the Supreme Court of the United States decided *Lilly v. Virginia,* —— U.S. ——, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). We are heartened to see that our earlier opinion in this case, *United States v. Valenzuela,* 53 F.Supp.2d

992 (N.D.Ill.1999)(excluding the confession of unavailable co-defendant under Federal Rule of Evidence 804(b)(3)), is in full conformity with the *Lilly* holding that, under circumstances similar to those in this case, an unavailable co-defendant's confession to police that incriminates the defendant is inherently suspect and, therefore, inadmissible as a declaration against interest. *See Lilly,* —— U.S. ——, ——, 119 S.Ct. 1887, 1898, 144 L.Ed.2d 117("{A}ccomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule as that concept has been defined in our Confrontation Clause jurisprudence.")(plurality opinion). In our view, the *Lilly* decision provides a scholarly review of the constitutional dangers inherent in the government's use of an unavailable accomplice's out-of-court statements. It is our hope that the reader of our opinion and Justice Stevens' superb *Lilly* opinion will carefully scrutinize the admission of similar accomplice statements. We believe the government and the interests of justice are always better served by live accomplice testimony that can be tested by in-court cross examination and, thus, appropriately evaluated by the trier-of fact. Our standard instructions require a jury to weigh an accomplice's in-court testimony with great caution and care, *see* Fed. Crim. Jury Instructions of the Seventh Circuit 3.23(Witness Who Has Pleaded Guilty); prosecutors and judges should similarly weigh an accomplice's out-of-court testimony.

is scheduled for tomorrow. We decided to release this opinion, even though Valenzuela may not be going to trial, to highlight the dearth of caselaw on the issue of co-defendants' hearsay confessions in the hopes of assisting other courts struggling, as we have, with the issue.

---

4. This Court orally granted Valenzuela's motion to exclude on Friday May 14, 1999, after briefing was completed. Almost simultaneously, Valenzuela's counsel informed the Court that he may have reached an agreement with the government under which Valenzuela would plead guilty. A change of plea hearing